**STATE of Missouri, Respondent,**

v.

**Donald SAFFOLD, Appellant.**

**No. WD 32101.**

Missouri Court of Appeals, Western District.

Aug. 31, 1982.

Basil L. North, Jr., North, Watson & Bryant, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The defendant Saffold was convicted by a jury of robbery first degree [§ 569.020, RSMo 1978] and sentenced to a term of ten years. The appeal contends errors in instruction and admission of evidence, and contests the sufficiency of the proof for a circumstantial evidence submission.

The defendant Saffold was a security guard at the Chrisman Sawyer Bank. He commenced employment on Monday, November 5, 1979. The bank was robbed on Friday, November 9, 1979. The sum of $80,000 in currency was taken. The actual theft was performed by another [identified by evidence as one Johnson] garbed in the uniform used by Saffold for the bank duty. There was prosecution evidence that Johnson and Saffold were companions and coworkers as security guards. There was also evidence that Johnson owned a 1972 brown Mercury automobile capped by a distinctive hood ornament. The defendant Saffold owned a white over blue Buick.

On the day of the robbery, Leach, a part-time bank employee, arrived at 7:15 a. m. to park on the business lot. She noticed a large brown car in her accustomed space. The car sported a silver hood ornament and was equipped with whitewall tires. A white over blue Buick was the only other car on the lot. The blue car was not occupied. She parked her car—a Gremlin—next to the brown car in the preempted space. A half-hour later, the assistant manager Cannon arrived to open the bank. She noticed three cars on the lot: a Gremlin [the Leach vehicle], a brown Mercury and a white over blue car. The brown Mercury displayed a winged hood ornament. The white over blue car she knew belonged to guard employee Saffold. As she walked by the Saffold car, a black man [whom she took to be the defendant, but actually was Johnson] dressed in a guard uniform and sunglasses, came out of the car and followed her through the bank door [which she unlocked]. She disengaged the alarm system, obtained the keys to the vault, and as she turned, heard the man say: "Is that all you got to do?" She then realized that he was not the guard Saffold. The man [Johnson] at gunpoint ordered Cannon to open the vault and fill a bag with currency. She complied, and the robber made escape with $80,000 in twenty, ten, five and one dollar bills.[1] She ran to the window immediately, and saw that the Saffold [white over blue Buick] was still parked there, but that the brown Mercury was gone. She activated the alarm and the police arrived. The witness testified also that on the very first day of work, that Monday, Saffold had asked her whether the bank was equipped with surveillance cameras and at what times the employees reported for work.

There was prosecution evidence—and evidence by the defendant himself—that Saffold spent $9,800 in the month following the robbery. That evidence was that Saffold paid $3,300 for a truck, $1,800 for a guard dog, $4,000 as a downpayment on the purchase of a home, and more than $500 to pay his accounts. These transactions were all in cash and within days of the robbery event. The payments for the truck, home and jewelry were in twenty-dollar bills. The defendant explained that he kept a cache of $10,333.30 in a briefcase in the basement accumulated from the earnings of his two employments as well as the earnings of his

---

1. The more exact recapitulation of the loot was: $57,500 in twenty-dollar bills, $18,500 in tens, $3,000 in fives and $1500 in single dollar bills.

wife and girlfriend. The defendant was prompted to the various purchases by the danger of his new employment as a security guard—and was merely a provision for his companion who was by then with child.

The defendant Saffold offered a version of the events: On that morning, as he awaited in the car the arrival of manager Cannon to open the bank premises, he was accosted by three men, one brandished a pistol and demanded his guard uniform garments. Saffold complied and was then disarmed and fettered with his own handcuffs. He was ordered to lie face down on the back seat. The armed assailant donned the guard clothes and sat in the front seat; the other two left. [The defendant denied that the armed assailant was William Johnson, identified at the trial as the active perpetrator of the robbery.] Saffold saw manager Cannon walk past the car and watched the robber as he followed her into the bank. Some few minutes later, the defendant heard the bank door close, saw the robber run out of the bank and jump into the Saffold car, pull the car up to the end of the lot, enter his own car and drive off. The escape vehicle, Saffold described, was a blue 1965 Chevrolet. Saffold then sounded the car horn with a foot, managed to open the door and ran to a nearby house to summon the police. He described the three assailants to the police, as well as the escape car.

The prosecution presented evidence that the robber was William Johnson[2] and [as we noted] a companion and co-worker of Saffold. There was testimony by yet another co-worker that when they were all in the common employment of a security guard enterprise Saffold sought out Johnson at job sites. The witness confirmed that Johnson owned a brown 1972 Mercury embellished with a distinctive chrome hood ornament. There was other testimony that Saffold accompanied Johnson more than once to the car lot where the Mercury was purchased. That same witness testified also that on November 19, 1979 [ten days

after the robbery] Johnson paid off the $800 balance. Saffold acknowledged Johnson was an acquaintance but that their friendship was ruptured some two months before the robbery date.

■ The defendant contends that there was error in the submission of circumstantial evidence Instruction No. 8 [MAI–CR2d 3.42] because the evidence was not sufficient to raise an inference of guilt. In exposition, the defendant argues that there was no legitimate proof that Saffold aided the robbery by an affirmative act, and only by an inference piled on a more remote inference could the jury have found guilt. The instruction the defendant proscribes is not shown in the record and so the validity of that submission is not preserved for our review. Rule 30.04(a); *State v. Bartz,* 544 S.W.2d 86, 88[3–5] (Mo.App.1976). The defendant neither defines the purport of the compounded inference argument nor cites authority for any such peremptory principle of evidence. [*See,* among others 1 Wigmore on Evidence § 41 (Third Edition 1940); *State v. Ross,* 602 S.W.2d 816, 818[1] (Mo. App.1980); *State v. Feger,* 340 S.W.2d 716, 721[3–5] (Mo.1960); *State v. Ashcraft,* 342 Mo. 608, 116 S.W.2d 128, 132[2] (1938)]. Thus, the argument presents only an unreviewable cliché. These disparate points, therefore, are not preserved for review. Nonetheless, divested of these technical aspects, the essential assertion of the defendant is that the evidence did not make a submissible issue of the circumstantial guilt of the defendant. We review that contention.

■ To warrant conviction on evidence wholly circumstantial the facts must so clearly indicate the guilt of the accused as to exclude any reasonable hypothesis of innocence. The circumstances, however, need not demonstrate that innocence was absolutely impossible. *State v. Maxie,* 513 S.W.2d 338, 343[5] (Mo.1974). These inferences probative of the role of the defendant as an aider-participant in the robbery, and

**2.** *State v. Johnson,* 632 S.W.2d 43 (Mo.App. 1982) reports the conviction, affirmed on appeal of coactor Johnson.

therefore of guilt, readily flow from these facts in evidence: Saffold, then just employed as a bank guard, made inquiry concerning the presence of surveillance cameras on the premises and the arrival times of the various workers—from which a preparation for the commission of the robbery as perpetrated follows as a reasonable inference. Saffold was present at the scene of the crime and, although his evidence was that he was a victim of the crime, made no effort to summon help while the robbery was in progress although he was unattended. Saffold described the three assailants to the police, but neither indicated that he knew Johnson nor gave a verisimilar description—which allows the inference that Saffold intentionally misdirected the police investigation away from Johnson [the principal actor] and, therefore, from himself. Saffold described the escape car as a 1965 blue Chevrolet [unnoticed by any other witness] and made no mention of the distinctive brown Mercury [owned by Johnson] and noticed on the lot by all the other witnesses immediately prior to the robbery—which allows the inference that the Chevrolet testimony was bogus and merely another misdirection of the police investigation from Johnson and himself. Then there was the evidence that immediately after the robbery Saffold spent nearly $10,000— for the most part in $20 dollar bills, the predominant denomination of the currency stolen. The evidence of that extravagance allows inference that Saffold shared the fruits of the criminal venture and, conjointly with the other probative inferences, was an aider with the purpose to commit the robbery.

■ The contention that the money expenditures by Johnson and Saffold after the date of the robbery was improper evidence, inherently prejudicial, does not avail. The sudden acquisition of wealth consequent to a theft, if unexplained, is a circumstance, among the others, to prove that the possessor is guilty of the offense. The evidence is admissible for that purpose in the discretion of the court where the full facts of the case warrant. *United States v. Goldenstein,* 456 F.2d 1006, 1011 (8th Cir. 1972); *United States v. Crisp,* 435 F.2d 354, 360 (7th Cir. 1970). The other contention that the evidence fails to show any affirmative conduct by Saffold to further the robbery also is without merit. To prove affirmative participation, the evidence need only show that an accused—either alone or as an aider— acted with purpose to promote the commission of an offense to find guilt: that is, that "the accused participated in the crime in some manner as something he wished to bring about" [*State v. Harris,* 602 S.W.2d 840, 844[6, 7] (Mo.App.1980)]; § 562.041. The participation of the defendant in the robbery as an enterprise "he wished to bring about" is amply shown by the evidence of the Saffold conduct before, during and after the offense coupled with presence at the scene. *State v. Arnold,* 566 S.W.2d 185, 187[3] (Mo. banc 1978); *State v. Johnson,* 510 S.W.2d 485, 488[3–5] (Mo.App. 1974).

■ The defendant contends next that Instruction No. 5, the verdict director, was erroneous because it failed to require the jury to find that Saffold acted with criminal intent and otherwise contradicted the definition of criminal responsibility submitted by Instruction No. 6. We note anew that these formal submissions, necessary to the questions the defendant poses on appeal, are not part of the record on review. Rule 30.04. We may assume that the instructions were modeled on MAI–CR2d 2.12 [State's Verdict Directing Instruction—Active Participants or Aiders] in combination with MAI–CR2d 23.02 [Robbery in the First Degree] and MAI–CR2d 2.10 [Persons Aiding, Agreeing to Aid or Attempting to Aid Another or Others]. The prosecution accedes to these designations in the briefs and responds to them in argument without cavil. That does not suffice to engage our review, nevertheless, simply because the contention of instruction error the appellant argues in his brief was not preserved for review at the trial or on the motion for new trial. Rule 28.03. The objection now posed was not the objection the new trial motion advanced: that there was no evidence to sustain the direction of Instruction No. 5 to

find Saffold guilty if the defendant acted "either before or during the commission of the offense of robbery in the first degree, with the purpose of promoting its commission, [and thus] aided William Johnson in committing that offense." That specification of error in the motion for new trial merely reformulates the contention that the evidence was not sufficient to submit the issue of guilt—an assertion already treated and rejected. The specification of error on appeal, on the other hand, attacks the integrity of Instruction No. 5 as a valid definition of offense. The motion for new trial, moreover, ascribed no role to Instruction No. 6—as does the brief on appeal—as a source of error in Instruction No. 5. A party who neglects to preserve error is not entitled to review as a matter of course. *State v. Murry*, 580 S.W.2d 555, 556[1, 2] (Mo.App.1979). There remains only review for plain error. Rule 30.20.

■ To demonstrate plain error, more than prejudice must appear: the trial lapse must so affect a substantial right so as to result in manifest injustice or a miscarriage of justice if not redressed. Rule 30.20; *State v. Miller*, 604 S.W.2d 702, 706[3–6] (Mo.App.1980). To find plain error from a submission, the instruction must so misdirect or fail to direct the jury as to cause manifest injustice. *State v. Moland*, 626 S.W.2d 368, 370[1–3] (Mo.1982); *State v. Murphy*, 592 S.W.2d 727, 733[17, 18] (Mo. banc 1979). The two instructions under complaint—No. 5 and No. 6—were submitted in the precise form of MAI–CR2d 2.12 [as modified for first degree robbery by MAI–CR2d 23.02] and MAI–CR2d 2.10. These instructions must be given whether requested or not where the evidence shows the defendant acted with another. Notes on Use (3), MAI–CR2d 2.10. The complaint of the defendant is, however, that those combined submissions were both contradictory and neglected to submit the element of a criminal intent.

■ In particular, Instruction No. 6 [MAI–CR2d 2.10] submits the criminal responsibility of Saffold as an aider in the *planning and commission* of the crime

whereas Instruction No. 5 [MAI–CR2d 2.12 modified by MAI–CR2d 23.02] directed conviction if the jury find that Saffold aided Johnson in the *commission* of the offense. There was ample compass in the evidence for jury inference that Saffold aided Johnson *both to plan and to commit* the offense, so that the instruction discrepancy is harmless. The presence of Saffold on the bank car lot that morning [as a reassurance to manager Cannon that the occupant of that familiar vehicle was her security guard], the assumption of his garb by Johnson [as a deception to facilitate his entry into the bank] and his fettered immobility [to distract the police inquiry away from Johnson and himself and to facilitate the Johnson escape] were all evidence of a *commission* of the offense. There was no plain error from that aspect of submission.

■ The defendant complains also that the verdict director failed to submit an essential element of the offense: a culpable mental state. Instructions No. 5 and No. 6, each, directed a verdict of guilty if the jury find that Saffold aided Johnson *with the purpose of promoting the robbery*. The defendant argues that *purpose* does not submit a criminal *intent*. In dictionary usage the terms are synonyms. Webster's New Collegiate Dictionary, 596, 930 (1981). In statutory usage the terms are synonomous. The culpable mental states for criminal liability are defined in § 562.016:

1. Except as provided in section 562.026, a person is not guilty of an offense unless he acts with a culpable mental state, that is, unless he acts purposely or knowingly or recklessly or with criminal negligence, as the statute defining the offense may require with respect to the conduct . . . .

2. A person "*acts purposely*," or with purpose with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result.

Comments to that section explicate that "'[p]urposely' and 'knowingly' refer to what is commonly thought of as intention." The criminal code discards the *intention*

terminology for the more understandable *with purpose* equivalent. A culpable mental state for robbery is established where the defendant acts *purposely, or knowingly or recklessly* [§§ 569.020, 562.021(2), 562.016]; *State v. Clark,* 607 S.W.2d 817, 821 (Mo.App.1980). Instructions No. 5 and No. 6 conformed to the exact requirements of the statutes and MAI–CR. There was no error.

The final point contends that the failure of the verdict director to submit a specific intent by Saffold to aid the robbery was a variance from the information and resulted in plain error. The indictment charged that Saffold "[e]ither acting alone or knowingly in concert with another, forcibly stole . . . ." The instruction submitted that Saffold aided Johnson *with the purpose* to promote the commission of the robbery. The defendant argues that *knowingly* in the indictment "makes it quite clear that defendant Saffold is charged with acting with a specific intent" whereas to submit that a defendant aids a commission of a robbery with the *purpose* to commit the offense does not ascribe a culpable mental state. This contention is made for the first time on appeal and we review for plain error at the invitation of the defendant. Our determination that an instruction that Saffold aided Johnson *with the purpose* to promote the commission of the offense submits a culpable mental state conformable to any requirement of statute or model instruction and precludes the contention. We determine also [the implicit cognate] that an indictment which charges conduct *knowingly* done and a verdict director which submits conduct *purposely* done is not such a variance as to result in manifest injustice to an accused.

The judgment is affirmed.

All concur.