**STATE of Missouri, Respondent,**

v.

**Squire LOGAN, III, Appellant.**

**No. WD 31719.**

Missouri Court of Appeals,
Western District.

Nov. 16, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Jan. 4, 1983.

Application to Transfer Denied
Feb. 23, 1983.

James W. Fletcher, Gary L. Gardner, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Squire Logan was convicted of two counts of second degree robbery, § 569.030, RSMo 1978[1] and sentenced to fifteen years on each count for a total of thirty years. He charges error to the aider liability instructions (MAI–CR2d 2.10 and 2.12); the correctness of the trial court's "Judgment/Sentence" order; and the admissibility of a weapon not used in the robberies but related to those crimes.

Affirmed.

Defendant does not question the sufficiency of the evidence to support his convictions, however, the specific facts of the crimes must be stated in order to clarify the role each participant played in the activities surrounding the robberies. On January 7, 1979, Vicki Hill, Michael Mitchell, Donald Mitchell and defendant met and planned the robbery of a Vickers service station near the intersection of 87th Street and I–435 in Kansas City, Missouri. Defendant then drove the group in his van to pick up Lonnie Frazier, who was solicited to join in the robbery.

Both Hill and defendant were employees of the Vickers Company at the time of the robbery; Hill had previously worked at the 87th Street station and defendant was an assistant manager of another Vickers. Hill knew the attendant on duty the evening in question and she and defendant explained to the others where they could find the keys to the cash register and safe. Aware that Hill and defendant would be recognized by the service station attendant, the parties agreed that those two would remain behind in defendant's van. Because defendant's van was also recognizable to the attendant, the group drove around the area for more than one-half hour searching for an automobile to steal to use in the robbery. When they found that endeavor unsuccessful, the five decided that the Mitchell brothers and Frazier should go on foot to the station, complain they were out of gas and then rob the attendant. If possible, the plan then called for the three men to steal the attendant's car and meet with Hill and defendant later on the I–435 access ramp.

The Mitchells and Frazier proceeded to the Vickers station armed with a .38 caliber handgun and a gas pistol. The parties had discussed taking along a sawed-off shotgun, and although defendant urged that this weapon be used in the robbery, it was decided to leave it in the van. When the three reached the station they noticed the attendant's car was snow covered and, according to Michael Mitchell, "didn't look like it was running." The three then held up the attendant at gunpoint and stole some $2,400 from the cash register and safe

1. All statutory references are to RSMo 1978, unless otherwise indicated.

at the station. While the robbery was in progress, a customer, Francis Eimer, drove into the Vickers lot. Donald Mitchell and Frazier forced Eimer, at gunpoint, to relinquish his automobile, and the three men made their escape in this vehicle. Shortly thereafter, the three met with defendant and Hill on the I-435 overpass, abandoned Eimer's vehicle, drove to defendant's house and divided the money.

## I.

Defendant does not contest his liability for the robbery of the Vickers station (Count I). He contests only his liability for the automobile robbery, contending that §§ 562.036 and 562.041, of the 1979 Criminal Code do not authorize a defendant to be convicted of an offense committed by other persons when he did not initially contemplate that offense.

The state submitted both robberies using instructions patterned after MAI–CR2d 2.12, (verdict directors) and MAI–CR2d 2.10 (general accountability for aiders). Instruction No. 6, was a modification of MAI–CR2d 2.10, and read:

> A person is guilty of an offense if it was committed by conduct for which he is criminally responsible, whether that conduct was his own or that of other persons or both his own conduct and that of others.
>
> A person is criminally responsible for the conduct of others in committing a particular offense when, either before or during the commission of an offense, with the purpose of promoting the commission of that offense he aids such other persons in planning that offense.
>
> A person is also criminally responsible for any other offense which he knew that such other persons were practically certain to commit in the course and furtherance of the particular offense initially contemplated.

The verdict directors were modifications of MAI–CR2d 2.12. Instruction No. 7 submitted Count I, the service station robbery:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on January 8, 1979, Michael Mitchell, Donald Mitchell and Lonnie Frazier committed the offense of robbery in the second degree of the Vicker's Gas Station located on East 87th Street, Kansas City, Jackson County, Missouri, and
>
> Second, that the defendant, either before or during the commission of the offense of robbery in the second degree with the purpose of promoting its commission, aided such other persons in planning that offense, and
>
> Third, that on January 7, 1979 in the County of Jackson, State of Missouri, Michael Mitchell, Donald Mitchell and Lonnie Frazier stole approximately $2,000 in the charge of Glen Gerred, and
>
> Fourth, that Michael Mitchell, Donald Mitchell and Lonnie Frazier in doing so threatened the immediate use of physical force on or against Glen Gerred for the purpose of forcing Glen Gerred to deliver up the property.
>
> then you will find the defendant guilty under Count I of robbery in the second degree. [Tail omitted.]

Instruction No. 9 submitted Count II, the automobile robbery. The first two paragraphs of this instruction were the same as Instruction No. 7, after which it stated:

> Third, that on January 7, 1979, in the County of Jackson, State of Missouri, Michael Mitchell, Donald Mitchell and Lonnie Frazier stole a 1970 Chrysler Newport owned by Francis Eimer, and
>
> Fourth, that Michael Mit[ch]ell, Donald Mitchell and Lonnie Frazier in doing so threatened the immediate use of physical force on or against Francis Eimer for the purpose of forcing Francis Eimer to deliver up the property, and
>
> Fifth, that such offense was committed by such other persons in the course and furtherance of the offense of robbery in the second degree of the Vicker's Gas Station on East 87th Street, Kansas City, Jackson County, Missouri, and
>
> Sixth, that the defendant knew such other persons were practically certain to commit such additional offense,

then you will find the defendant guilty under Count II of robbery in the second degree. [Tail omitted].

MAI–CR2d 2.12 "must be given, whether requested or not, when there is any evidence that the defendant acted with others, either as an active participant or one who aided, agreed to aid or attempted to aid another in planning, committing or attempting to commit an offense." MAI–CR2d 2.10, Notes on Use 3. MAI–CR 2.12, Notes on Use 5 provides: "If MAI–CR 2.12 is used, the court must give a separate instruction defining the offense initially contemplated . . . ." (*See* Instruction No. 7). Notes on Use 6 to this same MAI–CR provides: "The Third, Fourth and Fifth paragraphs must all be included if the defendant is being charged with an offense committed by another person but other than the original offense contemplated by defendant that he and the other person would commit." (*See* paragraphs four through six in Instruction No. 9). Thus, the trial court correctly followed the MAI–CR2d Notes on Use in submitting Instructions No.'s 6, 7, and 9 as offered by the state.[2]

■ There has not been occasion for a Missouri court to consider the provisions of the 1979 Criminal Code nor the applicable MAI–CR2d as regards a crime not initially contemplated by the defendant. (The crimes here were committed seven days after the effective date of the code.) In a word, defendant claims that under the new code, no instructions should have been proffered on the secondary robbery, *i.e.,* that the last paragraph of Instruction No. 6 (MAI–CR2d 2.10) and paragraphs four through six of Instruction No. 9 (MAI–CR2d 2.12) were erroneously submitted. These instructions address the liability of an accomplice for an offense not initially contemplated, even though the new code does not *specifically* address that same issue. The question for this court is whether those instructions on a crime not initially contemplated, based on MAI–CR2d, are cognizable under §§ 562.016, 562.036 and 562.041 of the new code.[3]

Section 562.016 provides in part:

1. Except as provided in section 562.026, a person is not guilty of an offense unless he acts with a *culpable mental state,* that is, unless he acts purposely or knowingly or recklessly or with criminal negligence, as the statute defining the offense may require with respect to the conduct . . . . [Emphasis added.]

Section 562.036 provides:

A person *with the required culpable mental state* is guilty of an offense if it is committed by his own conduct or by *the conduct* of another person for which he is *criminally responsible, or both.* [Emphasis added.]

Section 562.041 provides:

2. MAI–CR2d 2.10 and 2.12 were withdrawn, effective January 1, 1982, by Order of the Supreme Court of Missouri entered April 14, 1981. A new MAI–CR2d 2.12 and Notes were adopted in that Order, which did not cover the criminal responsibility of a defendant for another person's conduct if that conduct was never contemplated by the defendant. However, the part of the April 14, 1981 Order withdrawing 2.10 and 2.12 has subsequently been rescinded by Order of the Supreme Court entered February 16, 1982, and the prior 2.10 and 2.12 instruction were reinstated in full.

In an order of April 30, 1982, the supreme court again has withdrawn MAI–CR2d 2.10 and submitted a new MAI–CR2d with detailed Notes on Use covering a defendant's criminal responsibility for the conduct of another in various different situations. This order is to be effective January 1, 1983.

3. Although the state argues on appeal that the evidence was unquestionably sufficient to find that defendant "initially contemplated" stealing Eimer's automobile, this was not the theory upon which the state tried and submitted the cause to the jury. If the state's argument were accepted, it would mean that the prosecutor should have submitted the second robbery the same as it did the first, with an instruction that the jury had to find that defendant had the "purpose to promote" the automobile robbery. The state chose to try this case on the theory that defendant did not initially contemplate the second robbery, and it may not change its theory of criminal responsibility on appeal. This court may not simply presume on appeal that the jury would have found that defendant had the "purpose to promote" the second robbery because the transcript shows evidence of such.

1. A person is criminally responsible for the conduct of another when

\* \* \* \* \* \*

(2) Either before or during the commission of an offense *with the purpose of promoting* the commission of *an offense,* he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense. [Emphasis added.]

■ Sections 562.036 and 562.041 combine to require the trier of fact to make two separate findings before an accomplice may be held liable for the offense of another. First, he must have *purposefully promoted "an offense."* If the trier finds that he has that purpose, he is deemed "criminally responsible" for "the conduct" of the principal. Second, the accomplice must have a *"culpable mental state"* for all crimes for which he is to be held liable. Although the code provides that *the conduct* of the principal may be imputed to the accomplice, it does not provide that *the mental state* may similarly be imputed. The new Missouri Criminal Code: Manual For Court Related Personnel § 7.8. This much is clear from the language of § 562.036, which prefaces the concept of "criminal responsibility" for conduct with a requirement that the accomplice be "[a] person with a culpable mental state." *See also* § 562.016, *supra,* ("a person is not guilty of an offense unless he acts with a culpable mental state"); § 562.051 ("when two or more persons are criminally responsible for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own mental state").[4]

It should be noted that the requirement of a "culpable mental state," marks a change from the common law, at least when there is an additional crime not originally contemplated. In most one crime situations under the code, if the accomplice has the purpose to promote the offense, he necessarily will have the required culpable mental state for that offense. *See State v. White,* 622 S.W.2d 939 (Mo. banc 1981). *But see* Notes on Use 7, MAI–CR2d 2.12, Order of the Supreme Court, April 20, 1982. In the multiple crime situation, however, where evidence indicates the accomplice may have only purposefully promoted the initial crime, the required mental state is not necessarily implied for the subsequent crime or crimes. Additional evidence of the accomplice's mental state for such crime is still required. This is a departure from common law, where the accomplice was held liable for all offenses committed by the principal which were a natural and probable consequence of the intended offense. *State v. Ludwig,* 609 S.W.2d 417, 419 (Mo.1980); *State v. Chernick,* 278 S.W.2d 741, 746 (Mo. 1955); *State v. Crews,* 585 S.W.2d 131, 135 (Mo.App.1979). Under that cited law, although the accomplice may not have initially contemplated a second offense of the principal, he could have been found guilty if that second offense was a natural and probable consequence of the designed offense, without any regard to his mental state. Although some other jurisdictions have retained this common law concept in the language of their criminal code,[5] Missouri's criminal code does not contain any such language.

■■ Again, the Missouri criminal code requires both criminal responsibility for

---

**4.** Notes on Use 4 to MAI–CR2d 2.10 posits a hypothetical which illustrates the code's dual requirements:

[This paragraph] deals, for example, with a defendant's responsibility for an assault committed by a person whom the defendant is aiding in the commission of a burglary. This paragraph should be included only where the defendant is charged with the second offense (assault in the example given above). It must be supported by evidence; if not supported by evidence the defendant would be entitled to an acquittal on motion as a matter of law. The law stated in this paragraph is derived from *Section 562.036* which *renders a defendant responsible for an offense* committed by another person (assault in the example given above) *only if the defendant had the "required culpable mental state" for the offense (the assault* in the example given). Section 562.036. [Emphasis added, parentheticals original.]

**5.** Kan.Stat.Ann. § 21–3205(2) (1974); Minn. Stat.Ann. § 609.05 (1964); Wis.Stat.Ann. § 939.05 (1977).

conduct *and* a culpable mental state for all offenses. "To be guilty of an offense the defendant must himself have the necessary culpable mental state for that offense, but his liability can be based upon the conduct of another person." The New Missouri Criminal Code: Manual For Court Related Personnel § 7.8, *supra.* As to conduct, §§ 562.036 and 562.041 state that the accomplice may be held responsible for "the conduct" of the principal if he purposefully promotes "an offense", without limiting the scope of that conduct. Thus, if defendant Logan purposefully promoted the service station robbery, §§ 562.026 and 562.021 deem him responsible for all of the conduct that ensued thereafter. Here, the jury was properly instructed and found that defendant purposefully promoted the initial robbery, and no error resulted from finding him "criminally responsible" for the conduct of his companions.

The code limits a defendant's liability for such other conduct, however, with its ubiquitous requirement of a "culpable mental state." §§ 562.016.1 and 562.036. For example, if defendant had purposely promoted only the service station robbery, but one of the active participants proceeded to rape a female customer unbeknownst to defendant, defendant may be held "criminally responsible" for all of the participant's conduct, including the rape, but would not be held liable for the rape unless he had "the required culpable mental state" for that conduct. (*See* footnote 4). The code is in line with modern principles of legal justice in considering conduct such as the rape too attenuated from the accomplice's intended conduct to find liability. *See generally,* W. LaFave & A. Scott, *Criminal Law,* 364, p. 511 (1972).

Thus, the only remaining question is whether the jury was instructed in line with §§ 562.036 and 562.041 as regards "the required culpable mental state" for the second robbery. Paragraph six of Instruction No. 9 required the jury to find that

defendant was "practically certain" that his companions would commit the automobile robbery, *i.e.,* that he had the "knowledge" that the second robbery could result from the conduct he purposefully promoted. *See* § 562.016.3(2); The New Missouri Criminal Code: Manual For Court Related Personnel § 7.8, *supra; State v. Saffold,* 639 S.W.2d 243, 248 (Mo.App.1982).

Defendant's argument essentially implies that knowledge is not a sufficient mental state for the second robbery but that defendant must have had "the purpose to promote" that offense as well as the first robbery. The state, on the other hand, contends that knowledge is "too liberal" a standard, because the new code did not abrogate the natural and probable consequences rule. Neither argument is convincing.

The state's argument is contrary to the specific language of the new code, as the code does not retain any of the common law terminology regarding "natural and probable consequences," but, to the contrary, requires a culpable mental state for all crimes. §§ 562.016, 562.036 and 562.051.[6] Defendant's argument, if accepted, would mean that he could never be liable for a crime he did not *specifically purposefully* promote. Thus, if he purposefully promoted an offense whereby the principals would steal the cash register money from a store, and he was practically certain that his companions would steal anything of value within their grasps, he could not be liable if the companions forcibly stole the attendant's wristwatch or wallet. The new code cannot be interpreted to have such a restricted scope.

■ Although the code does not specifically address the required mental state of an accomplice for a crime not initially contemplated, the MAI–CR2d's requirement of "knowledge" certainly complies with the code. The MAI–CR2d provisions recognize that an accomplice who, when he promotes

6. The state's reliance on *People v. Kessler,* 57 Ill.2d 493, 315 N.E.2d 29 (1974), is misplaced. The Illinois statutes relied upon in that decision are different in several respects from Missouri's parallel statutes, most importantly they do not contain "the required culpable mental state" condition precedent to criminal responsibility contained in § 562.036.

one crime, has knowledge that other crimes may occur, has a "culpable mental state" with regard to those other crimes. Nothing more should be required. A culpable mental state for robbery is established where the defendant acts purposely, or knowingly . . . *Saffold, supra,* at page 248.

Therefore, in answer to defendant's first claim of error, this court holds that the MAI–CR2d provisions submitted here are clearly cognizable under the new Criminal Code. Moreover, under the theory tried by the state, the evidence supported the jury's finding that defendant had the knowledge that it was going to be necessary for his confederates to steal an automobile to facilitate an escape from the service station. Although paragraphs three through five of the 2.12 instruction may not be appropriate for all offenses not initially contemplated by an accomplice,[7] there was no prejudicial error in submitting that instruction on the facts in the case at bar. Defendant's first point is denied.

■ Defendant's second point asserts that the trial court erred in sentencing him to first degree robbery when he was found guilty of second degree robbery. The error is found in the order of the court captioned "Judgment/Sentence", and was merely a clerical error, which has been corrected by the trial judge by an order *nunc pro tunc.* The error in this case could be and was properly corrected without prejudice resulting to defendant. *See* Rule 29.12(c). Defendant's second point is denied.

■ Defendant's last point is that the trial court erred in admitting into evidence the shotgun and shells that were present in defendant's van at the time of the robberies. Although defendant's counsel objected to the admission of the weapon and a shell, when they were offered into evidence, these objections were based on "chain of custody" grounds, not relevancy, and this point was therefore not properly preserved for review. *State v. Larkins,* 518 S.W.2d 131, 135–136 (Mo.App.1974); *State v. Woodard,* 499 S.W.2d 553, 560 (Mo.App.1973). This court will, nonetheless, undertake review of this point as "plain error" under Rule 29.12(b).

■ Defendant cites to *State v. Charles,* 572 S.W.2d 193, 198 (Mo.App.1978), in support of his contention. However, that decision held that prejudice may attach to demonstrative evidence of "lethal weapons completely unrelated to and unconnected with the criminal offense". It can not be said that the shotgun and shells here were "completely unrelated to and unconnected with" the robberies in question. Defendant was being charged as an accomplice and the state presented testimony from several of his confederates that defendant "orchestrated" the service station robbery. Because several of the witnesses testified that they and defendant had discussed whether or not to use the shotgun in the robbery, (defendant had originally suggested its use) the state offered the shotgun as corroberative evidence of that testimony.

Although the shotgun's connection with the offenses in question may be slight, other cases have held that weapons, although not actually used in the crime, may be admissible if the evidence "sufficiently establishes: the weapons are connected with the crime or could show a "common scheme" to commit the crime. *State v. Clark,* 592 S.W.2d 709, 718–719 (Mo. banc 1979); *State v. Johnson,* 539 S.W.2d 493, 515–516 (Mo.App.1976). The admission of the shotgun and shells here did not result in "manifest injustice or miscarriage of justice." Rule 29.12(b).

The judgment of the trial court is affirmed.

---

**7.** Cases involving felony murder (§ 565.003) and capital murder (§ 565.001), for example, involve special problems regarding the culpable mental state required by the accomplice. *See State v. Turner,* 623 S.W.2d 4, 7–8 (Mo. banc 1981).