STATE of Missouri, Respondent,

v.

Harrell L. JOHNSON, Appellant.

No. WD 70392.

Missouri Court of Appeals,
Western District.

May 25, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 29, 2010.

Application for Transfer Denied
Aug. 31, 2010.

Ruth Sanders, Kansas City, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, C.J., JAMES EDWARD WELSH, and GARY D. WITT, JJ.

JAMES EDWARD WELSH, Judge.

Harrell Johnson appeals the circuit court's judgment convicting him of murder in the first degree.[1] Johnson contends that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt for murder in the first degree because the State failed to produce evidence that Johnson knowingly caused Erica Michelle Marie Green's death after deliberation upon the matter. We affirm the circuit court's judgment.

Viewing the evidence in the light most favorable to the verdict, the evidence established that, in April 2001, Johnson and Michelle Johnson[2] were living in Kansas City in a house that belonged to Johnson's cousin. Two children lived with the Johnsons: three-year-old Erica Green[3] and six-month-old Markeshia Johnson.

In the latter part of April 2001, the family arrived home one evening around 8:00 or 9:00 p.m. At some point after they arrived home, Michelle Johnson went into the back room and saw Erica and Johnson standing in the bedroom. At that time, Johnson was high on PCP and alcohol. Michelle Johnson told Erica to go to bed. Michelle Johnson then left the room and took a bath. According to Johnson, Erica was "being bad" and was resisting their efforts to get her to go to sleep. Johnson believed that the victim was not obeying, and, after he told the victim five or six times to go to sleep, he became agitated.

When Michelle Johnson came back to the room, Erica was again out of bed and standing up. Michelle Johnson asked Johnson, "What is [Erica] doing standing up?" Johnson told Michelle Johnson that he told Erica to stand up. Michelle Johnson said that she then told Johnson, "Well, that's my kid, I control her; that's your baby over there (referring to Markeshia Johnson)." Michelle Johnson then again told Erica to lie down. At that time, Michelle was sitting on the bed, and Erica was standing a few feet from her, with Johnson behind her. According to Michelle Johnson, at that point, Johnson raised his foot up and kicked Erica in the head.[4] Erica collapsed to the floor and immediately lost consciousness.

Michelle Johnson picked up the unconscious Erica and took her to the bathroom. Michelle Johnson placed Erica in some cold water and tried to revive her. Erica

---

1. Johnson was also convicted of one count of endangering the welfare of a child in the first degree and one count of child abuse resulting in death. Johnson does not appeal these convictions.

2. Because the Johnsons have the same last name, we will refer to the appellant as "Johnson" and use both the first and last name when referring to Michelle Johnson.

3. Erica was Michelle Johnson's biological child but not Johnson's biological child. We will refer to her as Erica hereafter.

4. Michelle Johnson's testimony and Johnson's statement suggest that Johnson only kicked Erica once, but the physical evidence establishes a more prolonged assault on the victim.

was unresponsive: she did not move her arms or legs, and her eyes were rolled back into her head. Michelle Johnson knew that something very serious had happened, and she knew that Erica was in need of medical assistance. Despite Michelle Johnson's efforts in the bathroom, Erica did not respond or wake up. After about ten or fifteen minutes, Michelle Johnson took Erica back to the bedroom and laid her on the floor. Erica remained unconscious and unresponsive but her eyes were no longer rolled completely back into her head.

Johnson and Michelle Johnson knew that Erica was in serious medical trouble, and they discussed whether they should obtain medical assistance for her. They did not seek medical treatment for her because they both had outstanding warrants. They feared that, if they got help for Erica, their warrants would be discovered, and they would go to jail. Therefore, they decided not to get medical assistance for Erica. According to Michelle Johnson, she agreed not to call an ambulance, even though she thought that Erica would die without medical attention.

For the next ten to fourteen hours, Erica remained unconscious and unresponsive. The next morning, Michelle Johnson and Johnson attempted to feed Erica, but Erica died without ever regaining consciousness and without responding in any way.

After Erica died, Johnson and Michelle Johnson decided to get rid of Erica's body. They waited until it got dark and then took Erica's body out through a window of the house. They took hedge clippers with them and took Erica's body to a nearby wooded area. Johnson took off Erica's clothes and gave them to Michelle Johnson. Johnson then severed Erica's head with the hedge clippers, put the head inside two garbage bags, and dumped the

head into a dumpster at a nearby church. Johnson left Erica's naked, decapitated body in the woods.

After Johnson threw Erica's head into the church's dumpster, Michelle Johnson told Johnson that people at the church would smell the head and find it. So, Johnson and Michelle Johnson retrieved the head, walked down the street, and threw the head into the wooded area where they had left the body. Johnson and Michelle Johnson then returned home and climbed into their room through the window.

The next day, when Johnson's cousin asked about Erica, Michelle Johnson told her that Betty Brown had come and taken Erica to Oklahoma. This was not viewed with suspicion because Erica had been living with Brown shortly before Michelle Johnson brought her to Kansas City.

At about 6:45 p.m., on April 28, 2001, a police officer found Erica's decapitated body in the woods. A search of the immediate vicinity did not reveal the location of Erica's head. On May 1, 2001, Erica's head was found in a garbage bag in the wooded area. Thereafter, the police began their investigation to determine the child's identity. At first the police believed that the child would be quickly identified as a missing local child, but when no one came forward, and when the victim's identity could not be established, the victim became known in the community and the media as "Precious Doe."

The police continued searching for the child's identity and investigating the circumstances of the child's death for over four years. During this time, Johnson and Michelle Johnson lived in various places. When asked about Erica, they would say that she was living with some other family member. Johnson and Michelle Johnson continued to hear media reports about

"Precious Doe," but they never came forward. At some point, Johnson's grandfather accused Johnson of the murder, and Johnson told him that Erica's death had been an accident.

On April 30, 2005, the police received a tip about the child's identity. On May 3, 2005, two officers traveled to Muskogee, Oklahoma, and, on the morning of May 4, 2005, they talked to Johnson's grandfather. Johnson's grandfather told the officers that he "wanted people to know the truth about who Precious Doe was before he should die." He then identified "Precious Doe" as Erica Green.

Both Johnson and Michelle Johnson had been arrested on some warrants in Oklahoma and were in the Muskogee County Jail, so the police proceeded to the Muskogee Police Department to question both Michelle Johnson and Johnson. When questioning Michelle Johnson, the police showed her a photograph of the victim, and Michelle Johnson identified her. On the back of the photograph, Michelle Johnson wrote, "Moma is so sorry. You are always in my heart and soul. Love you always, 'little E.'" Michelle Johnson then agreed to tell the police what had happened. After Michelle Johnson made her statement, she asked to meet with Johnson. Michelle Johnson then told Johnson that it was "over," that she had "come clean," and that he "should do the same."

Johnson started to cry, became upset, and told Michelle Johnson that he was "going to do the right thing to get her off." Johnson then made an oral and videotaped statement, describing how he had kicked Erica, withheld medical assistance, "disconnected" Erica's head, and discarded Erica's body and head in a wooded area. Johnson also identified a photograph of the victim, and on the back of the picture he wrote: "I'm so sorry that this happen, and I hope that you forgive me for I've done and I will always love you with my heart and my soul, Harrell Laron Johnson. I will always miss you. Harrell Johnson."

An autopsy revealed that Erica had suffered multiple injuries to her head.[5] There were several oval-shaped defects and some slit-like defects in various areas of her scalp and face. In the frontal scalp, on the top of the head, on the back of the head, and in the right temporal area, there was hemorrhaging, and in the right temporal area, there were also "areas of injury from blunt impact." The skull was intact, but inside the skull there was a small amount of subdural hematoma (a small blood clot) and large areas of subarachnoid hemorrhage. The subdural hematoma is an indicator of brain injury where the brain is moving rapidly and stopping within the inside of the skull.

According to the forensic pathologist who performed the autopsy, the subdural hematoma and the subarachnoid hemorrhage were caused by a closed head injury or a blunt force head injury. He said that the injuries he found on Erica's head were consistent with an act of severe kicking. He noted that the head bore multiple points of impact on different surfaces and said:

> We have a situation in which there are areas of deep scalp injury that are on the front of the head, they're on the top of the head, they're in the back of the head, and they're also in the right temple part of the head. These are areas that are just not simply on one surface, but there are areas of impact on multiple different surfaces indicating more than one impact.[6]

5. The autopsy also confirmed that Erica's head was cut off after her death.

6. At oral arguments, Johnson argued that the other injuries may have been caused by Erica

Further, on cross-examination, the forensic pathologist testified that the injuries to Erica were consistent with "a kick or kicks" to her head.

Dr. Gregory Horning, a pediatric neurosurgeon, examined the autopsy report and the deposition testimony of the forensic pathologist who performed the autopsy. Horning agreed with the forensic pathologist's determination that the cause of Erica's death was a closed head injury. Horning said that Johnson's and Michelle Johnson's descriptions of Erica's initial symptoms—immediate loss of consciousness and immobility—were consistent with the closed head injury described in the autopsy report. Dr. Horning said that there would have been a progression of symptoms as a result of the injury. Horning said that because Erica survived at least ten hours after being injured, she probably would not have died with medical intervention. Horning said that the decision not to obtain medical treatment caused Erica's death.

On September 29, 2008, the State filed an information in lieu of indictment, charging Johnson with murder in the first degree, endangering the welfare of a child in the first degree, and abuse of a child resulting in death. After a trial, a jury found Johnson guilty of all three offenses. The circuit court sentenced Johnson to life imprisonment without probation or parole for murder in the first degree charge, four years imprisonment for endangering the welfare of a child, and twenty five years imprisonment for child abuse resulting in death. The circuit court ordered that the sentences be served consecutively. Johnson appeals.

In his sole point on appeal, Johnson contends that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt for murder in the first degree because the State failed to produce evidence that Johnson knowingly caused Erica's death after deliberation upon the matter. To establish murder in the first degree, the State alleged that there were two causes for Erica's death—the closed head injury and the failure to seek medical aid. Johnson asserts that, because the State offered evidence and argument that Johnson deliberated upon only the failure to seek medical aid and did not offer evidence that Johnson deliberated upon causing the closed head injury, the evidence was insufficient regarding deliberation. Johnson claims that, although the failure to seek medical aid was a factor in Erica's death, it was not the cause of her death, and therefore, evidence that Johnson behaved deliberately in failing to seek medical aid could not establish that he committed murder in the first degree. Johnson insists, therefore, that the State had to establish that Johnson deliberated upon causing the closed head injury and that the evidence was insufficient regarding deliberation upon the closed head injury. Moreover, Johnson maintains that, at the very least, even if the failure to seek medical aid was a cause of Erica's death, the State had to establish that he deliberated upon both asserted causes.

In reviewing the sufficiency of the evidence, we deem all evidence favorable to the State to be true. *State v. Crawford*, 68 S.W.3d 406, 407 (Mo. banc 2002). We do not reweigh the evidence, and we disregard all evidence and inferences contrary to the verdict. *Id.* at 408. Our review is limited to determining

---

hitting her head when she fell. The forensic pathologist testified, however, that the severe nature of the injuries suggested "something beyond what would happen in just a simple fall."

whether or not the State presented sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *Id.*

"A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1, RSMo 2000. In the information in lieu of the indictment, the State charged Johnson with first degree murder stating that Johnson "after deliberation, knowingly caused the death of Erica M. Green by causing a closed head injury to her and making the decision not to obtain medical aid for Erica M. Green[.]" Consistent with this charge, on the murder in the first degree charge, the circuit court instructed the jury:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 28, 2001, in the County of Jackson, State of Missouri, the defendant caused the death of Erica Green by causing a closed head injury and making the decision not to obtain medical aid for her, and

Second that defendant knew or was aware that his conduct was practically certain to cause the death of Erica Green, and

Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you will find the defendant guilty under Count I of murder in the first degree.

Johnson asserts that the evidence was insufficient because the State did not offer any evidence that Johnson deliberated upon causing the closed head injury. Johnson argues:

It is evident that the State did not establish that Mr. Johnson deliberated upon causing the closed head injury. The evidence was simply that Mr. Johnson raised his foot and kicked [Erica]. There was no evidence that he said or did anything before this act; nothing presented from which the jury could reasonably infer that Mr. Johnson coolly reflected on his actions.

We disagree.

■ Deliberation required for conviction for murder in the first degree is defined as "cool reflection for any length of time no matter how brief." § 565.002(3), RSMo 2000; *State v. Strong,* 142 S.W.3d 702, 717 (Mo. banc 2004), *cert. denied,* 543 U.S. 1059, 125 S.Ct. 872, 160 L.Ed.2d 786 (2005). "Proof of deliberation must ordinarily be provided through the circumstances surrounding the crime. Deliberation may be inferred, but it must still be proved beyond a reasonable doubt." *Strong,* 142 S.W.3d at 717 (internal citation omitted).

Sufficient evidence supported a finding that Johnson deliberated prior to kicking Erica in the head. The evidence showed that Erica suffered multiple injuries to her head. There were several oval-shaped defects and some slit-like defects in various areas on her scalp and face. In the frontal scalp, on the top of the head, on the back of the head, and in the right temporal area, there was hemorrhaging, and in the right temporal area, there were also "areas of injury from blunt impact." The skull was intact, but inside the skull there was a small amount of subdural hematoma and large areas of subarachnoid hemorrhage. The subdural hematoma indicated that the victim's brain had accelerated and stopped rapidly inside the skull. The injuries were consistent with an act of severe kicking, and the head bore multiple points of impact on different surfaces.

Additionally, the evidence showed that Johnson was "high" on PCP and alcohol and that the assault occurred after Johnson became "agitated" with Erica when she refused to obey him. The evidence showed that Johnson thought that Erica was being bad, that he thought Erica was not obeying, and that he told Erica five or six times to go to sleep. The evidence further showed that the assault upon Erica occurred immediately after Michelle Johnson made a point of telling Johnson that he should not be exercising control over Erica because Erica was her "kid" and not his.

 This evidence shows that Johnson had time to think about what he was going to do. He had been contending with Erica for some period of time, trying to get her to go to bed. When that was unsuccessful, he resorted to kicking Erica. "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." *State v. Johnston*, 957 S.W.2d 734, 747 (Mo. banc 1997), *cert. denied*, 522 U.S. 1150, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998) (internal citation omitted). "The deliberation necessary to support a conviction of first-degree murder need only be momentary; it is only necessary that the evidence show that the defendant considered taking another's life in a deliberate state of mind." *State v. Jones*, 955 S.W.2d 5, 12 (Mo.App.1997).

Moreover, the evidence established that Johnson inflicted more than one blow on Erica's head. From the number of injuries to Erica's head, a reasonable juror could have concluded that Johnson severely kicked the victim multiple times, knowing that he would cause her death. Indeed, " '[e]vidence of a prolonged struggle, multiple wounds, or repeated blows may . . . support an inference of deliberation.' " *State v. Tisius*, 92 S.W.3d 751, 764 (Mo.

banc 2002), *cert. denied*, 539 U.S. 920, 123 S.Ct. 2287, 156 L.Ed.2d 140 (2003) (citation omitted).

Further, a jury could infer that Johnson intended to cause Erica's death and that he deliberated upon it because Johnson prevented Michelle Johnson from telephoning for help and he refused to obtain medical assistance for Erica. The inference of deliberation can be strengthened by the fact that defendant failed to seek medical aid for the victim. *Strong*, 142 S.W.3d at 717.

Finally, that Johnson intended to kill the victim and deliberated upon the murder can be further inferred from his actions in concealing the identity of the victim. Indeed, as the record shows, Johnson was highly determined to conceal his crime, as he took the extraordinary step of decapitating the victim so as to prevent identification of the victim's body. The inference of deliberation may be supported by a defendant's conduct after the crime in attempting to conceal his involvement in the murder. *State v. Moore*, 949 S.W.2d 629, 632 (Mo.App.1997).

 Although Johnson expressed remorse and stated that he had not intended to kill the victim, his " 'description of his mental state is not binding on the jury.' " *State v. Smith*, 185 S.W.3d 747, 759 (Mo.App.2006) (citation omitted). Indeed, a "jury is not bound by any self-serving claims made by [the defendant] and is entitled to reject any or all of his testimony as false." *Id.* Likewise, insofar as both Johnson and Michelle Johnson testified as to a single kick by Johnson to Erica's head, the jury was free to disbelieve such testimony. This is particularly true in light of the medical testimony confirming multiple injuries to various parts of Erica's head.

Johnson argues that the State informed the circuit court that it did not think that it was required "to prove that when the kick occurred that [Johnson] intended to kill the child but that he deliberated thereafter in a way which did kill the child[.]" The State then told the jury during closing arguments that the closed head injury was not premeditated. The State asserted:

> Was the first act premeditated? No. Is the word premeditation even in those instructions? Sometimes we think that what that means, and it's not. You hear than on television, premeditated. That's not what Murder in the First Degree is, and you will find that word nowhere in the instructions of the Court, not a single place.[7]

Johnson asserts that "[t]he State did not even attempt to establish that [he] deliberated before he kicked Erica, and in fact [the State] expressly disavowed that argument" at trial. Johnson then points out that the State repeatedly argued at trial that Mr. Johnson deliberated upon his failure to seek medical aid for the victim.

But, in making this argument, Johnson confuses the prosecutor's arguments with the evidence that was presented and the inferences that a rational finder of fact could have drawn from the evidence. The relevant question is not what arguments the prosecutor made; rather, the relevant question is what evidence could the jury have credited and what reasonable inferences could the jury have drawn from that evidence. "The question of sufficiency arises before the case is put to the jury and is really an issue of whether the case should have been submitted to the jury." *State v. Beggs*, 186 S.W.3d 306, 312 (Mo. App.2005). The evidence was sufficient to submit this case to the jury on murder in the first degree as to whether Johnson knowingly caused Erica's death by a closed head injury after deliberation upon the matter.

 Moreover, the circuit court instructed the jury prior to closing arguments that the attorneys would have the opportunity to argue the case to the jury and that the attorney's arguments are not evidence. We presume that a jury properly follows the instructions as given by the circuit court. *State v. Norman*, 243 S.W.3d 466, 473 (Mo.App.2007).

Johnson contends that the State cannot "change its theory of criminal responsibility on appeal" and relies on *State v. Logan*, 645 S.W.2d 60, 63 n. 3 (Mo.App.1982), in support of its contention. Johnson's reliance on *Logan*, however, is misplaced. In *Logan*, the theory of criminal liability that the State argued on appeal was not the same theory of criminal liability submitted to the jury. Here, by contrast, the possibility of guilt premised upon Johnson's deliberating prior to the closed head injury was submitted to the jury.

The evidence was sufficient to support a finding of guilt beyond a reasonable doubt that Johnson knowingly caused Erica's death by a closed head injury after deliberation upon the matter.[8] We, therefore, affirm the circuit court's judgment.

All concur.

---

**7.** In this argument, we presume that the State is attempting to distinguish premeditation from deliberation. The State correctly notes that premeditation is not used in the instruc-

tion. Indeed, only "deliberation" is used and defined in the instruction.

**8.** Johnson states that the cause of death, in terms of Johnson's criminal liability for mur-

der in the first degree, was the closed head injury. Thus, because we conclude that Johnson deliberated before causing the closed head injury, we need not address any of Johnson's arguments concerning whether or not the failure to seek medical treatment was a legal cause of Erica's death.