**STATE of Missouri, Respondent,**

v.

**Derrick Ray SMITH, Appellant.**

**No. WD 66048.**

Missouri Court of Appeals,
Western District.

March 6, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2007.

As Modified May 1, 2007.

Application for Transfer Denied
Aug. 21, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

Rebecca Kurz, Assistant Appellate Defender, Kansas City, MO, for Appellant.

Before SMART, P.J., and EDWIN H. SMITH and HARDWICK, JJ.

EDWIN H. SMITH, Judge.

Derrick R. Smith appeals the judgment of the Circuit Court of Lafayette County, after a jury trial, of his convictions on Count I of the indictment against him for first-degree robbery, § 569.020,[1] and on Count II for armed criminal action (ACA), § 571.015. He was convicted on a theory of accomplice liability for aiding and abetting James Scott in the robbery of Harold's Supermarket (Harold's), located in Lexington, Missouri, during which Scott "displayed or threatened the use of what appeared to be a deadly weapon," to-wit, a gun. The appellant was sentenced as a prior and persistent offender, pursuant to §§ 558.016 and 557.036, to consecutive terms of imprisonment in the Missouri De-

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

partment of Corrections of life on Count I and fifty years on Count II.

The appellant raises what he designates as one point on appeal. He claims that the trial court, with respect to Count I, charging him with robbery in the first degree and submitted to the jury on a theory of accomplice liability, erred in refusing to instruct the jury on the lesser-included offenses of robbery in the second degree, § 569.030, and stealing, § 570.030, because the court misapplied § 556.046, requiring it to instruct the jury on those lesser-included offenses, where, as here, the jury, from the record, could have acquitted the appellant of robbery in the first degree, but convicted him of robbery in the second degree, or acquitted him of both robbery in the first and second degrees, but convicted him of stealing.

We reverse and remand.

### Facts

On August 21, 2002, at about 11:30 a.m., the appellant, dressed in a white shirt and overalls, drove a purplish-black or black-cherry, four-door Saturn, accompanied by Scott, dressed in dark clothes and a dark baseball cap, to the Wal–Mart Store located on Blue Ridge Boulevard in Raytown, Missouri. The vehicle belonged to Mia Wilson, an acquaintance of the appellant. Wal–Mart surveillance videotapes revealed: Upon entering the store, Scott and the appellant went directly to the sporting goods department. After the appellant spoke with the cashier, the cashier turned around and knelt down behind the counter. At that point, the appellant left the sporting goods department. Thereafter, Scott purchased some .22 caliber ammunition, which was placed in a sack. The appellant and Scott then left Wal–Mart together, with Scott carrying the ammunition.

Later that same day, at approximately 12:15 p.m., Christopher Brooks, an employee of a Lexington, Missouri, lawn service company, was leaving a lawn he had just mowed near 20th and McKinley Street in Lexington, when he saw Scott and the appellant pass him in the Saturn the appellant was driving. He did not otherwise know the men, but remembered taking note of them at this encounter. At approximately 1:00 p.m., Brooks was mowing a lawn near Harold's Supermarket in Lexington when he saw Scott, whom he recognized as the man he had seen earlier in the day, around 12:15 p.m., riding in the Saturn with the appellant, walking through a grassy area toward the store's entrance. Scott entered the store and approached Patricia Ratcliff, a cashier in the front of the store, and asked her to call a manager to the store's safe so that he could cash a check. Nancy Caldwell, a manager at Harold's, told Ratcliff that she would cash the check.

As Caldwell approached the store's safe, she noticed that a cart was blocking it. As she was trying to move the cart out of the way, Scott told her to open the safe. Thinking this unusual, she turned to him and saw that he was pointing a gun at her. He told her to get the safe's combination correct the first time, because while he did not want to hurt her, he would. She begged him not to hurt her, and he told her that he would not. She opened the safe and then stepped away. Scott reached in, took money from the safe, and quickly exited the store.

After Scott had fled, Caldwell immediately yelled that the store had been robbed. She ordered Ratcliff to call 911. Brooks, still mowing, saw Scott walk quickly out of the store, in the same direction from which he came. A short time later, he saw a dark purplish-black Saturn drive off in the distance in a southerly direction. He did not get a good look at

the vehicle's occupants, but he could tell that there were two heads in the car.

Immediately after leaving the store, Scott and the appellant drove to Sharon Mason's apartment, at the Garden Apartments in Lexington, in search of her boyfriend, Steven Brown, the appellant's nephew's older half-brother. Since Brown was not home, and Mason did not know Scott or the appellant very well, she was concerned about letting them into her apartment. After both she and the appellant spoke with Brown on the telephone, she allowed Scott and the appellant to enter her apartment. While inside, the appellant used the restroom and got a drink of cold water out of Mason's refrigerator.

When the police arrived at Harold's, Don Rector, the Chief of Police of the Lexington Police Department, was advised by a store employee that the robber had fled the scene in a black Saturn headed south. Rector immediately headed south from the store in search of the Saturn. He later saw what he believed to be the vehicle and radioed to the Lafayette County Sheriff's Department to set up a perimeter. Although Rector lost sight of the vehicle, Lafayette County Sheriff's deputies and members of the State Highway Patrol set up a perimeter, sealing off the area where the vehicle might be and shutting off highway access from Lexington.

After losing sight of the vehicle, Rector went back to Harold's and interviewed Brooks. Brooks gave him a description of the vehicle used in the robbery. He described the robber, who was the passenger in the vehicle, as a tall black male wearing a dark shirt and a dark hat. He described the driver as a heavy-set black male with a beard. As a result, Rector alerted local law enforcement officers to be on the lookout for a Saturn matching the one described by Brooks. The Saturn driven by the appellant was subsequently located in the parking lot of the Garden Apartments where he had parked it. Brooks was transported there by the police and identified the Saturn as being identical to the vehicle involved in the robbery of Harold's.

At some point, Mason noticed that several law enforcement vehicles were parked outside of her apartment, causing her to walk out her front door to investigate. As she did, Scott and the appellant exited her apartment through the back door. Chris Small, the maintenance-man for the apartments, who was mowing grass at the time, saw the two men in back of Mason's building. Sensing that the police might be looking for these men, Small yelled to the police, alerting them that the men were in back of the apartments. With that, the police went to investigate. Before they were able to apprehend the appellant, Small saw him hide something under some landscaping rocks near Mason's apartment building. Scott was able to flee on foot, but was eventually arrested.

Mason consented to the police searching her apartment. During the search, a Bank Midwest bag filled with cash and checks made out to Harold's was found in the salad crisper of Mason's refrigerator. It was later determined that Harold's banked with Bank Midwest. A search of her apartment's exterior revealed a gun and a dark baseball cap hidden under some mulch in the landscaping. In addition, under the landscaping rocks, where Small observed the appellant place something before he was arrested, $5,087 in cash was found. All of the items of evidence found during the search were processed by the police. All of the cash and checks were returned to Harold's. At the end of the day, taking into account the returned cash and checks, Harold's books showed that no money was missing.

After being apprehended and arrested, both Scott and the appellant were transported to the Lafayette County jail, where their personal belongings were inventoried. Among the appellant's belongings, a small paper money-band with the words "Bank Midwest" and the numbers "2,000" and "1351" printed or stamped on it was found. The police later determined that the "2,000" represented that the band had secured $2,000 in cash, while the "1351" was a location code indicating that the cash had come from the Bank Midwest in Lexington.

On September 30, 2002, the appellant was indicted in the Circuit Court of Lafayette County, as a prior and persistent offender, pursuant to §§ 558.016 and 557.036, on one count of first-degree robbery, pursuant to § 569.020, and one count of ACA, pursuant to § 571.015, for the robbery of Harold's on August 21, 2002. As to Count I, the first-degree robbery charge, the indictment alleged that the appellant, "acting either alone or knowingly in concert with another, forcibly stole United States Currency and/or checks owned by or in the possession of Harold's Supermarket, and in the course thereof [he] or James Scott, another participant in the crime was armed with a deadly weapon or displayed or threatened the use of what appeared to be a deadly weapon." As to Count II, the ACA charge, the indictment alleged that the appellant, "acting either alone or knowingly in concert with another, committed the felony of Robbery in the first Degree charged in Count I, all allegations of which are incorporated herein by reference, and the defendant committed the foregoing felony of Robbery in the First Degree by, with and through the use, assistance and aid of a deadly weapon."

On August 27, 2003, the appellant's case proceeded to a jury trial. On August 28, 2003, the jury found the appellant guilty on both counts. The appellant was sentenced as a prior and persistent offender to concurrent terms of life and fifty years imprisonment. The appellant appealed to this court, and on February 1, 2005, we reversed his convictions and remanded for a new trial due to plain error in instructing the jury on note-taking in *State v. Smith*, 154 S.W.3d 461 (Mo.App.2005).

The appellant's second trial began on August 17, 2005. The appellant filed motions for judgment of acquittal at the close of the State's and all of the evidence, which were overruled. The jury found the appellant guilty of both first-degree robbery and ACA.

On September 6, 2005, the appellant filed a motion for judgment of acquittal or, in the alternative, for a new trial. On September 19, 2005, the motion was taken up and denied. On October 3, 2005, the appellant was sentenced to life in prison on the first-degree robbery charge and fifty years imprisonment in the DOC on the ACA charge, to run consecutively with each other. This appeal follows.

## Discussion

The appellant raises what he designates as one point on appeal. However, inasmuch as he is attacking the trial court's refusal to instruct the jury on *both* of the lesser-included offenses of robbery in the second degree, § 569.030, and stealing, § 570.030, he actually raises what are two points on appeal. Rule 84.04(d)[2] governs proper Points Relied On, providing, in pertinent part: "(1) Where the appellate court reviews the decision of a trial court, *each*

---

**2.** All rule references are to the Missouri Rules of Civil Procedure, 2006, unless otherwise indicated.

point shall: (A) identify the trial court ruling or action that the appellant challenges[.]" (Emphasis added.) Hence, as envisioned by the rule, we shall treat the appellant's designated point as two points.

## I.

■ The appellant first claims, with respect to Count I of the indictment, charging him with robbery in the first degree and submitted to the jury on a theory of accomplice liability, that the trial court erred in refusing to instruct on the lesser-included offense of robbery in the second degree, because the court misapplied § 556.046, requiring it to instruct the jury on that lesser-included offense, where, as here, the jury, from the record, could have acquitted the appellant of robbery in the first degree, but convicted him of robbery in the second degree. Specifically, he claims that the trial court erred in refusing to instruct on robbery in the second degree, as a lesser-included offense of robbery in the first degree, because the jury could have acquitted him of the greater offense and convicted him of the lesser offense in that, from the record, the jury could have found that in aiding Scott in the commission of the robbery, he did not act with the *purpose* of promoting the forcible stealing of the money by Scott from Harold's *with the use of a deadly weapon,* but only with the *purpose* of promoting the forcible stealing of the money. Causing serious physical injury to any person or being armed with, displaying, using, or threatening the immediate use of a deadly weapon or dangerous instrument or what appears to be a deadly weapon or dangerous instrument against a person is what distinguishes robbery in the first degree from robbery in the second degree.

In the indictment, the appellant was charged in Count I with robbery in the first degree, in violation of § 569.020, which reads, in pertinent part:

1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

The State alleged in Count I, in pertinent part, that:

[O]n or about August 21, 2002, in the County of Lafayette, State of Missouri, the defendant, acting either alone or knowingly in concert with another, forcibly stole United States Currency and/or checks owned by or in the possession of Harold's Supermarket, and in the course thereof defendant or James Scott, another participant in the crime was armed with a deadly weapon or displayed or threatened the use of what appeared to be a deadly weapon.

■ At the instruction conference, the appellant submitted Instruction No. A, submitting robbery in the second degree, which was rejected by the trial court. In support of the giving of that instruction, the appellant argued that pursuant to § 556.046, the trial court was mandated to instruct on robbery in the second degree as a lesser-included offense of robbery in the first degree. "A lesser-included offense is an offense established by proof of the same or less than all the facts required to establish the commission of the charged offense. An offense is a lesser-included offense if it is impossible to commit the charged offense without necessarily com-

mitting the lesser." *State v. Coker*, 210 S.W.3d 374, 380 (Mo.App.2006) (quotation marks and citations omitted). Robbery in the second degree is a lesser-included offense of robbery in the first degree. *Brooks v. State*, 51 S.W.3d 909, 914 (Mo. App.2001).

Section 556.046, governing instructing down on lesser-included offenses, provides, in pertinent part:

2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense....

3. The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.

Hence, in this point, if we find from the record that there was a basis in the evidence for the jury to acquit the appellant of robbery in the first degree, as submitted on a theory of accomplice liability, and convict him of robbery in the second degree, then the trial court erred in refusing to instruct down on the lesser-included offense of robbery in the second degree. § 556.046; *State v. Coker*, 210 S.W.3d at 384. If such is the case, we must reverse and remand for a new trial. *State v. Coker*, 210 S.W.3d at 384.

 For purposes of instructing down, in accordance with § 556.046, for there to be a basis for an acquittal of the greater offense, the record must be such that a reasonable juror could draw inferences that an essential element of the greater offense has not been established. *Id.* at 380. In the absence of such evidence, "a trial court should not instruct on

a lesser-included offense merely because the jury might disbelieve some of the [S]tate's evidence or decline to draw some or all of the permissible inferences." *Id.* Any doubt about whether to instruct down should be resolved in favor of so instructing. *Id.* In determining whether there was a basis in the evidence for the jury's acquitting the appellant of robbery in the first degree and convicting him of robbery in the second degree, we are to view the evidence in a light most favorable to the appellant in instructing down. *State v. Bruce*, 53 S.W.3d 195, 201 (Mo.App.2001).

At trial, Count I was submitted to the jury in Instruction No. 9, which reads:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 21, 2002, in the County of Lafayette, State of Missouri, James Scott took United States Currency and/or checks, which property was owned by or in the possession of Harold's Supermarket, and

Second, that James Scott did so for the purpose of withholding it from the owner permanently, and

Third, that James Scott in doing so threatened the use of immediate physical force on Nancy Caldwell for the purpose of preventing or overcoming resistance to the taking of the property, and

Fourth, that in the course of taking the property, James Scott displayed or threatened the use of what appeared to be a deadly weapon,

then you will find that the offense of Robbery in the First Degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of that offense, the defendant aided or en-

couraged James Scott in committing the offense,

then you will find the defendant guilty under Count I of robbery in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

In including Paragraph Fifth in the verdict director, Count I was submitted to the jury on a theory of accomplice liability, *State v. Lockett,* 165 S.W.3d 199, 206 (Mo. App.2005), such that for the jury to find the appellant guilty of first-degree robbery under Instruction No. 9, they had to find, beyond a reasonable doubt, not only that Scott was guilty of the conduct charged in Paragraphs First, Second, Third, and Fourth, the essential proof elements of robbery in the first degree, § 569.020, but that he, "with the purpose of promoting or furthering the commission of that offense," aided or encouraged Scott's conduct. In other words, to convict the appellant of first-degree robbery as an accomplice, the evidence did not have to show that he personally committed the conduct constituting the offense, but only that with the purpose to promote the offense of first-degree robbery, he "aided or encouraged" Scott's conduct constituting that offense. *State v. Hicks,* 203 S.W.3d 241, 244 (Mo. App.2006).

 Any evidence showing he affirmatively participated in aiding Scott to commit the crime of first-degree robbery is sufficient to support his own conviction of that crime. *Id.* This is because Missouri law "has eliminated the distinction between principals and accessories, and now, all persons who act in concert to commit a crime are equally guilty." *State v. Beggs,* 186 S.W.3d 306, 313 (Mo.App.2005) (internal quotation marks and citation omitted).

Circumstantial evidence is sufficient to show affirmative participation, including:

presence at the scene of the crime, flight therefrom, and association with others involved before, during, and after the commission of the crime. Also, conduct before and after the offense that tends to show a consciousness of guilt by reason of a desire to conceal the offense or the accused's role therein may create an inference of affirmative participation. Such an inference may also be drawn from the possession of recently stolen property or an attempt by an accused to deceive the police.

*State v. Parsons,* 152 S.W.3d 898, 903 (Mo. App.2005) (internal quotation marks and citations omitted).

In claiming that the trial court was required, in accordance with § 556.046, to instruct down on the lesser-included offense of robbery in the second degree, the appellant contends that the record permitted the jury to infer that he, although aiding Scott in the commission of the robbery of Harold's, did not act with the requisite "purpose of promoting or furthering the commission" of the offense of robbery *in the first degree* in that he did not know that Scott, in committing the robbery, would "display[ ] or threaten[ ] the use of what appeared to be a deadly weapon," which he asserts is an essential element of convicting him of robbery in the first degree on a theory of accomplice liability. In contending as he does, the appellant argues that §§ 562.036 and 562.041, governing accomplice liability, required the State, in order to convict him of robbery in the first degree on a theory of accomplice liability, to not only establish that he "purposefully promoted" the commission of that offense by Scott, but "had the culpable mental state" for that crime, citing two decisions of this court: *State v. Neal,* 14 S.W.3d 236, 239 (Mo.App.2000); and *Eng-*

*land v. State*, 85 S.W.3d 103, 110 (Mo.App. 2002). His reliance on those cases is misplaced.

Section 562.036 provides that: "A person *with the required culpable mental state* is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is criminally responsible, or both." (Emphasis added.) Section 562.041.1 provides two situations when a person is criminally responsible for the conduct of another:

(1) The statute defining the offense makes him so responsible; or (2) Either before or during the commission of an offense *with the purpose of promoting the commission of an offense,* he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

(Emphasis added.) Section 562.051 provides: "Except as otherwise provided, when two or more persons are criminally responsible for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state and with his own accountability for an aggravating or mitigating fact or circumstance." In *State v. White,* 622 S.W.2d 939, 944 (Mo. *banc* 1981), the defendant claimed on appeal, as the appellant does in this point, that these sections should be read as requiring the State, in order to convict him of capital murder as an aider and abettor, or accomplice, to establish two specific criminal intents—that he purposely promoted the underlying offense and that he had the requisite intent as to the underlying offense. The Court rejected his claim, stating, in pertinent part:

Appellant's reading of this statutory scheme is too broad in the sense that he views it as requiring the jury to find two specific intents. If the Legislature had intended to require an aider to have a dual intent, it would have said so in the statutes. To the contrary, the only requirement expressed in the three sections is found in § 562.041.1(2), RSMo 1978. The comment which accompanies § 562.041, V.A.M.S., 1979 states that "the section requires a purpose to promote the commission of an offense." There is no mention of an additional or separate mental state in this comment or the comments to the other two sections.

*Id.* (quotation marks and citations omitted). The Court went on to state, after taking into consideration the definition of "purpose" or "acting purposely," found in § 562.016(2), RSMo 1978:[3] "Therefore to be found guilty of a particular offense, an aider must aid another or others with the conscious object of causing that offense. A finding that the aider had this intent is equivalent to finding that the aider and active participant shared a common intent or purpose." *Id.* at 945. The Court's holding in *State v. White* was reaffirmed in *State v. Roberts,* 709 S.W.2d 857, 860–61 (Mo. *banc* 1986).[4] Consistent with the Court's holding in *State v. White,* as to the requisite mental state for accomplice liability, the applicable MAI–CR3d, MAI–CR3d 304.04 (9–1–03), requires the jury to find, in order to convict, that the defendant, with the purpose of promoting or further-

---

3. "A person **'acts purposely'**, or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result." § 562.016(2).

4. Following *State v. Roberts*, the Court, in *State v. O'Brien,* 857 S.W.2d 212, 217–18 (Mo. *banc* 1993), carved out an exception for murder in the first degree, holding that to the extent *State v. White* was being read to require less than proof of the defendant's own premeditation in every case, it was overruled.

ing the commission of the underlying offense, acted together with, aided, or encouraged the other or others involved in committing the offense.

■ In *State v. Neal,* this court did hold, in pertinent part, that §§ 562.036 and 562.041: "require the State to prove that a defendant (1) purposefully promoted an offense, and (2) had the culpable mental state for the crime for which he is to be held liable," 14 S.W.3d at 239, which was cited favorably by this court in *England v. State,* 85 S.W.3d at 110. However, both of those cases were decided after *State v. White* and *State v. Roberts* and neither made any mention of those cases.[5] They also did not discuss the plain language of § 562.041 and MAI–CR3d 304.04. Because we are bound by the most recent holding of our Supreme Court on the issue, *State v. Burgin,* 203 S.W.3d 713, 717 (Mo. App.2006), *State v. Neal* and *England v. State,* and their progeny, to the extent they require dual accomplice intent, by holding that an accomplice must not only purposely promote the underlying offense, but must also possess the requisite intent for the underlying offense, they were never good law and should not be followed.[6] Hence, other than in the case of murder in the first degree, *see State v. O'Brien,* 857 S.W.2d at 218 (holding that in order to convict a defendant of first-degree murder on a theory of accomplice liability, proof of his own premeditation is required), the only showing required as to the culpable mental state of an accomplice is that in aiding the principal in the commission of the offense, he acted with the purpose to promote the conduct of the principal that constituted the offense for which the accomplice is being held liable. *State v. Roberts,* 709 S.W.2d at 860–61; *State v. Johns,* 679 S.W.2d 253, 259 (Mo. banc 1984); *State v. White,* 622 S.W.2d at 945.

■ Ironically, although the Court's holding in *State v. White* refutes the appellant's contention that in convicting him of robbery in the first degree the State was required to prove dual criminal intents, it nonetheless provides support for his claim in this point. In that regard, although holding as a general proposition that when the aider is found to have purposely aided in the underlying offense and "thus has the same intent of the active participant, all other things being equal, they are liable *to the same degree,*" the Court recognized that "[s]ituations can exist where the liability of each is not the same." 622 S.W.2d at 945 (emphasis added). With respect to such situations, the Court held that: "§ 562.051, RSMo 1978, permits the defendant or the [S]tate to present evidence aggravating or mitigating the matter," by introducing evidence showing that he did not have the purpose or conscious object of aiding in the commission of the *particular degree* of the underlying offense, requiring the jury to "consider the defendant's guilt or innocence as to *each degree* of the offense independently from other defendants who might be liable for the same offense." *Id.* (emphasis added). In other words, in determining whether the appellant here, in aiding Scott in the commission of the robbery of Harold's, acted with the purpose of promoting that offense, the jury had to

---

5. In support of the proposition of dual intent, *State v. Neal* cited *State v. Logan,* 645 S.W.2d 60, 64 (Mo.App.1982), which did cite *State v. White,* without any discussion, as to why it supported dual intent. *State v. Neal,* 14 S.W.3d at 239. State v. England simply relied on *State v. Neal. State v. England,* 85 S.W.3d at 110.

6. These cases fall in that same vein and should not be followed: *State v. Hicks,* 203 S.W.3d 241, 245 (Mo.App.2006), *State v. Booyer,* 87 S.W.3d 926, 929 (Mo.App.2002), and *State v. Logan,* 645 S.W.2d 60, 63–64 (Mo.App.1982).

consider whether he acted with the purpose of promoting the conduct of Scott that constituted the specific degree of that offense, first-degree robbery.

As noted, *supra*, to convict the appellant of first-degree robbery as an accomplice, pursuant to Instruction No. 9, the State had to prove, *inter alia*, in accordance with Paragraph Fourth of the instruction, that Scott, in the course of taking the cash and checks from Harold's, displayed or threatened the use of what appeared to be a deadly weapon. This element is what distinguishes a robbery as a robbery in the first degree, as opposed to a robbery in the second degree. A "deadly weapon," for purposes of § 569.020, is defined as "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles." § 556.061(10); *State v. Young,* 172 S.W.3d 494, 497–98 (Mo.App.2005).

There is no dispute that Scott, in taking the cash and checks from Harold's, displayed a gun. In that regard, the evidence was that Caldwell testified that Scott pointed a gun at her during the robbery. Hence, for purposes of determining whether to instruct down on second-degree robbery, the record is such that the trial court could not have found, as required for instructing down on robbery in the second degree, that the jury could acquit the ap-

pellant of first-degree robbery on the basis that the State had failed to carry its burden of proof as to the proof element that: "in the course of taking the property, James Scott displayed or threatened the use of what appeared to be a deadly weapon." However, the appellant contends that the jury could have acquitted him of robbery in the first degree on the basis that the record was such that it could have believed that he did not have the requisite intent of an accomplice to aid or encourage Scott to take the cash and checks from Harold's with the use or threatened use of a deadly weapon. Inherent in this contention, of course, is the argument that the State, in order to convict the appellant of robbery in the first degree as an accomplice, had the burden of showing not only that Scott used or threatened the use of a deadly weapon in the commission of the robbery of Harold's, but that in aiding Scott in that robbery, the appellant acted with the purpose of promoting the robbery of Harold's by Scott with the use or threatened use of a deadly weapon.[7] And, pursuant to our discussion, *supra*, regarding the requisite *mens rea* of an accomplice for the commission of the offense of robbery in the first degree involving a deadly weapon, that the accomplice acted with the purpose of promoting the conduct of the principal required to constitute that offense, including the element that the principal in the course of taking the prop-

---

**7.** In his brief, the appellant cites *State v. Forister,* 823 S.W.2d 504, 507–08 (Mo.App.1992), *State v. Willyard,* 776 S.W.2d 859, 860 (Mo. App.1989), and *State v. Clay,* 748 S.W.2d 44, 46 (Mo.App.1988), all which cite *State v. Workes,* 689 S.W.2d 782, 785 (Mo.App.1985), and all four of which are Eastern District cases, for the proposition that an accomplice need not have "specific knowledge of which particular crime his co-participant will commit"; rather, "if a defendant has embarked upon a course of criminal conduct with others, he is responsible for those crimes which

he could reasonably anticipate would be a part of that conduct." He claims that the holdings of these cases are contrary to *State v. Neal* and *England v. State.* We agree. We read these cases as harmonious with *State v. Johns, State v. Roberts,* and *State v. White.* And, even if we were to read them as contrary to *State v. Johns, State v. Roberts,* and *State v. White,* since they are appellate court decisions, they would be trumped by *State v. Johns, State v. Roberts,* and *State v. White,* which are Supreme Court cases, leaving our analysis the same.

erty in question used or threatened the use of a deadly weapon, we would agree. Thus, under the standard for instructing down, as discussed, *supra*, the issue is whether the record, here, was such that the jury, without merely disbelieving some of the State's evidence or declining to draw some or all of the permissible inferences, could have reasonably inferred from the record that the appellant, in aiding Scott in the robbery of Harold's, did not act with the purpose or intent of promoting or encouraging Scott to rob Harold's with the use or threatened use of a gun.

Reviewing the record in a light most favorable to the appellant, *State v. Bruce*, 53 S.W.3d at 201, the record would have supported a finding by the jury that the appellant, in aiding Scott in the robbery, never acted with the purpose of promoting the specific offense of first-degree robbery in that the evidence is such that the jury could have reasonably inferred that he did not know that Scott was going to rob Harold's with the use of a gun. The only evidence in the record that arguably would show that the appellant had any knowledge of Scott intending to rob Harold's with a gun was the evidence that on the day of the robbery he accompanied Scott when he purchased ammunition at Wal-Mart. However, that evidence only showed that he was in the store at the time of purchase and was in the sporting goods department gesturing and conversing with the cashier just prior to the cashier's selling ammunition to Scott. However, it also showed that he did not, in fact, witness the purchase. And, there is no evidence that he ever had any conversation with Scott about the purchase of ammunition; that he ever saw the gun used by Scott in the robbery, before or after; or that Scott had told him he was going to use a gun or had used a gun in the course of the robbery.

While the jury may have reasonably inferred from the evidence that the appellant knew about the use of the gun in the robbery, that is irrelevant to the issue of instructing down. With respect to instructing down, the critical issue is whether the jury could have reasonably inferred from the evidence that he did not have the requisite intent to convict him of robbery in the first degree, such that it could have acquitted him of that offense and convicted him of the lesser-included offense of robbery in the second degree. Because the evidence was sufficient for the jury to have reasonably inferred therefrom that the appellant did not know anything about the gun used in the robbery, such that it could have acquitted him of robbery in the first degree on that basis, the trial court, provided there was also evidence on which the appellant could have been convicted of second-degree robbery, was required to instruct down on second-degree robbery and committed reversible error in failing to do so. *See State v. Coker*, 210 S.W.3d at 384 (stating that the trial court error of failing to instruct down on a lesser-included offense requires reversal and remand).

The only distinction between convicting the appellant for robbery in the first degree and second degree, given the record and the way the case was instructed on accomplice liability, was the issue of dual intent, which was resolved in the appellant's favor. Hence, inasmuch as there clearly was evidence in the record on which the appellant could have been convicted of robbery in the first degree, there logically was evidence on which he could have been convicted of robbery in the second degree such that it was error for the trial court not to instruct down.

Instructional error such as this does not implicate double jeopardy, *State v. White*, 92 S.W.3d 183, 193 (Mo.App. 2002), such that rather than reversing out-

right, we reverse the judgment convicting the appellant of robbery in the first degree and remand. And, inasmuch as his conviction for ACA is totally reliant on his conviction for robbery, it must also be reversed. *State v. Frost,* 49 S.W.3d 212, 221 (Mo.App.2001) (stating that since a conviction for ACA requires the commission of an underlying felony, reversal of the underlying felony conviction also requires reversal of the ACA conviction).

## II.

██ The appellant next claims, with respect to Count I of the indictment charging him with robbery in the first degree and submitted to the jury on a theory of accomplice liability, that the trial court erred in refusing to instruct on the lesser-included offense of stealing, because the court misapplied § 556.046, requiring it to instruct the jury on that lesser-included offense, where, as here, the jury, from the record, could have acquitted the appellant of both robbery in the first and second degrees, but convicted him of stealing. Specifically, he claims that the trial court erred in refusing to instruct on stealing, as a lesser-included offense of robbery in the first and second degrees, because the jury could have acquitted him of the two greater offenses and convicted him of the lesser offense in that, from the record, the jury could have found from the evidence that in aiding Scott in the commission of the robbery, he did not act with the *purpose* of promoting the *forcible* stealing of the money by Scott from Harold's, but only with the *purpose* of promoting the appropriation of the money by Scott from Harold's with the purpose to deprive Harold's thereof.

Because we are already reversing and remanding with respect to the appellant's first point, his second point is rendered moot. We will not address moot issues in criminal cases. *State v. Brock,* 113 S.W.3d 227, 233 (Mo.App.2003). An issue is moot when "the question presented for decision seeks a judgment upon some matter, which if judgment were rendered, could not have any practical effect upon any then existing controversy." *Heidebur v. State,* 980 S.W.2d 138, 140 (Mo.App.1998). We need only review such an issue when it is likely to come up again on remand. *State v. Wacaser,* 794 S.W.2d 190, 191 (Mo. *banc* 1990). In this case, we have no way of knowing whether the issue of instructing down on stealing as a lesser-included offense of robbery in the second degree will arise since that issue is totally reliant on the record that will be made at trial on remand. Hence, rather than speculating as to what the record may or may not be at trial on remand, we decline review of the issue of whether the trial court erred in failing to instruct down on stealing.

## Conclusion

The judgment of the Circuit Court of Lafayette County, convicting the appellant of first-degree robbery, pursuant to § 569.020, and ACA, pursuant to § 571.015, is reversed and the case remanded to the trial court for further proceedings consistent with this opinion.

SMART, P.J., and HARDWICK, J., concur.