STATE of Missouri, Respondent,

v.

Leotis Deland WILSON, Appellant.

No. WD 72958.

Missouri Court of Appeals, Western District.

Oct. 25, 2011.

---

Rosalynn Koch, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Division Three: JAMES E. WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

PER CURIAM:

Leotis Wilson was convicted following a jury trial of one count of trafficking drugs in the first degree, section 195.222, RSMo 2000,[1] and one count of possession of a controlled substance with intent to deliver, section 195.211. On appeal, Wilson challenges the sufficiency of the evidence to support his conviction on the first-degree drug trafficking charge. We affirm.

## Factual Background

Viewing the evidence in the light most favorable to the verdict,[2] on the evening of October 7, 2009, Sedalia police officers executed a "no-knock" search warrant at 1416 South Vermont. The officers entered the house through the back door which led directly into the kitchen. Once inside, the officers observed four persons in the kitchen. Gordell Poindexter was seated at the kitchen table with his back to the door. A female juvenile was seated next to him. Leotis Wilson was seated at the table across from Poindexter. Marquoi Staten was standing a few feet away at the kitchen counter. The officers ordered everyone to place their hands in the air. Wilson raised his hands but quickly placed them under the table, where it appeared that he was doing something. After again being ordered to place his hands in the air, Wilson complied. All four persons were placed in handcuffs.

Scattered throughout the kitchen, officers found crack cocaine and various drug-related paraphernalia. On the kitchen table, officers found a small baggie containing what appeared to be cocaine base (commonly referred to as "crack cocaine"), next to a rolled-up ten-dollar bill,[3] some pills and a small digital scale. An ashtray containing a small amount of marijuana was sitting on the scale. Officers also found an opened container of baking soda and a coffee cup containing cocaine base residue on the counter, which had apparently been used to mix up the crack cocaine.[4] On the floor directly beneath where Wilson had been seated was a small plastic baggie containing cocaine base. Near where Staten had been standing, officers found a large, damp chunk of crack cocaine on a paper towel. Officers believed the chunk of crack cocaine was left on the paper towel in order to dry before being packaged.

When Detective Joseph McCullough searched Wilson, he found a large bag containing eight individually packaged "rocks" of crack cocaine in his pocket. Based on his training and experience, Detective McCullough believed Wilson was carrying a "dealer amount" of drugs.[5] The officers also found a loaded .380–caliber handgun on the kitchen counter near Staten. In the living room, the officers found an abundance of plastic baggies with the corners missing.[6] During their search of

1. All statutory references are to the Revised Statutes of Missouri 2000, as supplemented, unless otherwise indicated.

2. *State v. Richardson*, 923 S.W.2d 301, 317 (Mo. banc 1996).

3. Rolled-up dollar bills are commonly used for snorting narcotics.

4. Crack cocaine is typically made with powdered cocaine, baking soda, and water, which is heated and then dried into chunks. The chunks are broken into "rocks" which can be individually packaged for sale.

5. A "dealer amount" of drugs would be considered to be a larger amount of drugs, as opposed to an amount that would be for personal use only.

6. Drug traffickers often use the corners of plastic baggies to package rocks of crack cocaine.

the home, officers also discovered two other persons in a bedroom of the home.

Laboratory testing of the seized items established that a baggie found on the kitchen table contained cocaine base and powdered cocaine (cocaine salt). The eight packages found in Wilson's pocket contained 1.06 grams of cocaine base. The baggie found on the floor in the kitchen beneath where Wilson had been seated contained 1.64 grams of cocaine base. The large rock found drying on the paper towel contained 4.04 grams of cocaine base. The coffee cup from the kitchen contained .08 grams of cocaine base.

After his arrest, Wilson was charged with one count of first-degree trafficking, one count of possession of a controlled substance with intent to deliver, distribute, and sell, and one count of unlawful transactions with a child. The third count was dismissed before trial.

Count I of the indictment charged Wilson with committing the class A felony of trafficking in the first degree, in violation of section 195.222, in that, on or about October 7, 2009, he "act[ed] together with others, manufactured and produced by chemical synthesis and manufactured by packaging 6 grams or more of a mixture of substance containing a cocaine base."

Although Wilson was charged with first-degree trafficking involving six grams or more of crack cocaine, at trial, the jury was also instructed, in the alternative, under Instruction No. 9, to consider whether Wilson was guilty of trafficking in the first degree [7] for a lesser amount of crack cocaine as follows:

As to Count 1, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 7, 2009, . . . the defendant, Gordell Poindexter, Marquoi Staten or other persons knowingly produced 2 grams or more of a mixture or substance containing cocaine base by chemically altering cocaine salts to create cocaine base, and

Second, that defendant, Gordell Poindexter, Marquoi Staten or other persons knew or was aware that the mixture or substance he produced contained cocaine base, then you are instructed that the offense of trafficking in the first degree under this instruction has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that trafficking in the first degree, the defendant acted together with or aided Gordell Poindexter, Marquoi Staten or other persons in committing that offense,

then you will find the defendant guilty under Count 1 of trafficking in the first degree under this instruction[.]

The State charged Wilson under a theory of accomplice liability.[8] Therefore, In-

---

7. Section 195.222.3 provides that, "A person commits the crime of trafficking drugs in the first degree if he . . . distributes, delivers, manufactures, produces or attempts to distribute, deliver, manufacture or produce more than two grams of a mixture or substance . . . which contains cocaine base[.]" In distinguishing the levels of punishment for first-degree drug trafficking based on the amount of cocaine base involved, section 195.222.3(2) states that, "If the quantity involved is six grams or more the person shall be sentenced to the authorized term of imprisonment for a class A felony which term shall be served without probation or parole."

8. Section 562.041.1(2) provides that, "A person is criminally responsible for the conduct of another when (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense."

struction No. 6 was also submitted to the jury as follows:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with another person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages another person in committing it.

At trial, the State presented testimony of the officers who had executed the search warrant and a criminalist with the Missouri State Highway Patrol Crime Laboratory who had analyzed the substances seized from the residence. Officer Joshua Howell, with the Sedalia Police Department, testified that when the officers arrived through the back door of the residence to execute the search warrant, they found Wilson seated at the kitchen table with two other persons. The officers ordered the persons to place their hands in the air. Officer Howell recalled that "Wilson began to raise his hands as instructed, but quickly put them back under the table where it appeared that he was doing something." Officer Howell also testified that he observed a rolled-up bill on the kitchen table and a small plastic baggie containing what appeared to be crack cocaine near the bill. He also recalled seeing a small scale on the table with an ashtray containing marijuana. He further testified that on the floor directly adjacent to where Wilson had been seated was a plastic baggie containing crack cocaine.

Officer Larry Parham, a detective with the Strike Team Investigation of Narcotics and Gangs ("S.T.I.N.G.") for the Sedalia Police Department, testified that he had assisted in executing the search warrant. With regard to the production of crack cocaine, he explained that the cocaine is mixed with baking soda and water until it

boils. Once the water evaporates, the leftover cocaine residue is mixed with the baking soda. As it hardens, the crack cocaine is broken into pieces or "rocks" in order to be individually packaged and sold for various prices, depending on the size of the rock. He also explained that crack cocaine is commonly smoked through a pipe, but indicated that no pipe was found in the kitchen area. Based on his training and experience as a narcotics detective, Officer Parham testified that considering the amount of crack cocaine found at the residence and the manner in which it was packaged, he would deem it to be a "sales amount," and not for personal use. He also stated that eight individually packaged rocks of crack cocaine would be considered to be a "dealer amount" of drugs.

Detective McCullough testified that when he and other officers entered the back door of the residence, he saw a loaded .380–caliber pistol near where Marquoi Staten was standing. After officers told everyone to raise their hands in the air, Detective McCullough recalled seeing Wilson place his hands underneath the kitchen table. Later, the officer found a bag of crack cocaine on the floor beneath where Wilson had been sitting, "right at his feet, where his feet would have been."

Detective McCullough indicated that when he searched Wilson, he found a large bag containing eight individually packaged "rocks" of crack cocaine in his pocket. Detective McCullough also opined that Wilson was carrying a "dealer amount" of crack cocaine. In addition to the crack cocaine found on Wilson, officers seized more crack cocaine and drug paraphernalia found in the kitchen, including a large chunk that was drying on a paper towel on the counter before being packaged, an opened container of baking soda, a coffee cup used for mixing the powdered cocaine with the baking soda, a rolled-up ten-dollar

bill found on the kitchen table, a digital scale, a loaded handgun, a cell phone, $380 cash, some pills, a small amount of marijuana found in Staten's pocket, and several plastic baggies with the corners removed found in the living room.

Officer Phil Stewart also testified at trial. He had worked for the Sedalia Police Department as a drug investigator for several years and was a sergeant with the S.T.I.N.G. unit at the time the search warrant was executed. He testified that upon entry into the residence and after securing the occupants of the house, he found powdered cocaine and crack cocaine on the tables and floors. He testified that he observed several items in the kitchen that appeared to have been used for manufacturing crack cocaine. These included a coffee cup containing cocaine base residue, a pan of water on the stove, a large chunk of crack cocaine drying on a paper towel, numerous scales, a handgun, and other paraphernalia indicative of a drug operation.

Officer Stewart stated that crack cocaine is typically made by mixing baking soda, powdered cocaine, and water. He explained that when the mixture is heated, a lot of the impurities and additives in the powdered cocaine are removed and the leftover product is crack cocaine. The crack cocaine is then dried and cut into chunks. He further explained that the numerous plastic baggies found at the scene with the corners removed were for packaging the crack cocaine. He testified that based on his training and experience, the items found in the kitchen provided all of the necessary materials, ingredients, and equipment to turn powdered cocaine into crack cocaine.

Wilson did not testify at trial or call any witnesses. At the close of the State's evidence and again at the close of all of the evidence, defense counsel moved for a judgment of acquittal, claiming that the State failed to prove the elements alleged in the indictment and that the evidence was insufficient to establish that Wilson committed the offense of first-degree trafficking. The trial court denied both motions.

After deliberation, the jury returned a guilty verdict on both the possession of a controlled substance count and the first-degree trafficking count (for two grams or more of crack cocaine), as submitted in Instruction No. 9. Defense counsel filed a motion for judgment of acquittal notwithstanding the jury verdict, or in the alternative, for a new trial. The trial court denied the motion and sentenced Wilson to ten years' imprisonment on each count, to run concurrently. Wilson appeals his conviction on the first-degree trafficking charge.

For his sole point on appeal, Wilson contends that the trial court erred in denying his motion for judgment of acquittal and in sentencing him for first-degree trafficking in violation of his due process rights. He does not challenge the fact that he was in possession of crack cocaine at the time police executed the search warrant. Nor does he challenge the evidence establishing that crack cocaine was being produced at the 1416 South Vermont residence. The sole issue is whether the evidence was sufficient to establish that Wilson encouraged or aided anyone in the manufacturing of the crack cocaine.

### Standard of Review

We review the denial of a motion for judgment of acquittal to determine if the State made a submissible case by presenting sufficient evidence. *State v. Sensabaugh*, 9 S.W.3d 677, 679 (Mo.App.1999). In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the

verdict, giving the State the benefit of all reasonable inferences. *State v. Langdon,* 110 S.W.3d 807, 811 (Mo. banc 2003). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). This court accepts as true all of the evidence favorable to the State and disregards all evidence to the contrary. *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). Reasonable inferences can be drawn from both direct and circumstantial evidence. *State v. Salmon,* 89 S.W.3d 540, 546 (Mo.App. 2002). Circumstantial evidence alone can be sufficient to support a conviction. *State v. Mosely,* 873 S.W.2d 879, 881 (Mo.App. 1994). The determination of the reliability, credibility, and weight of witness testimony is for the fact finder. *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990).

### Analysis

Wilson claims the jury could not have found him guilty on the trafficking charge because there was no proof connecting him to the drug manufacturing operation and the evidence did not establish that he did anything to encourage or help anyone manufacture crack cocaine. He maintains that his "mere presence" in the house at the time the police executed the search warrant is insufficient evidence to support his conviction.

The doctrine of accomplice liability applies to any number of potential acts intended by one person to assist another individual in criminal conduct. *State v. Whittemore,* 276 S.W.3d 404, 407 (Mo.App. 2009). A person is deemed criminally responsible for the conduct of others when, with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid other person(s) in planning, committing, or attempting to commit the offense. *State v. Holmquest,* 243 S.W.3d 444, 448 (Mo.App.2007). The evidence need not directly place the defendant in the act of committing the crime. *State v. Parsons,* 152 S.W.3d 898, 902 (Mo. App.2005). The law imputes to the defendant the criminal agency of his accomplices. *State v. Beggs,* 186 S.W.3d 306, 313 (Mo.App.2005).

To make a submissible case of accomplice liability, the State must show that the defendant associated himself with the venture or participated in the crime in some manner. *M.A.A. v. Juvenile Officer,* 271 S.W.3d 625, 629 (Mo.App.2008). However, the State *does not* have to show that the defendant personally committed every element of the crime; mere encouragement is enough. *Id.* Any evidence that shows affirmative participation by aiding or encouraging another person in the commission of the crime is sufficient to support the conviction. *Id.*

In determining whether the evidence is sufficient to support a conviction for the charged offense based on accomplice liability, evidence of the defendant's presence at the scene of the crime, coupled with his association with the individuals who committed the offense, either before, during, or after its occurrence, may be considered by the jury. *Id.* There is no particular act necessary to establish accomplice liability; mere encouragement is enough. *State v. Richardson,* 923 S.W.2d 301, 317 (Mo. banc 1996); *Sensabaugh,* 9 S.W.3d at 679. "Encouragement," for the purpose of determining accomplice liability, is the equivalent of conduct that by any means countenances or approves the criminal actions of others. *Sensabaugh,* 9 S.W.3d at 679. We must determine whether all of the facts and circumstances in evidence raise a reasonable inference

from which the jury could find that the defendant aided, encouraged, or participated in some manner in the charged offense. *State v. Townsend,* 810 S.W.2d 726, 727 (Mo.App.1991).

Here, in order for the jury to find Wilson guilty of trafficking under a theory of accomplice liability, the State was required to prove that: 1) Wilson or other person(s) knowingly produced two or more grams of cocaine base; 2) Wilson or the others knew that the resulting mixture was cocaine base; and 3) Wilson aided or encouraged the others in committing the offense. In other words, to convict Wilson of first-degree trafficking as an accomplice, the evidence did not have to show that he *personally committed* the conduct constituting the offense (manufacturing or producing the crack cocaine) for which he is being held liable, but only that with the purpose to promote the offense, he *aided or encouraged* another person's conduct that constituted the offense. *See State v. Smith,* 229 S.W.3d 85, 93 (Mo.App.2007).

The required mental state for the underlying trafficking offense is knowledge of the nature of the controlled substance. *State v. Norman,* 178 S.W.3d 556, 563 (Mo.App.2005). Knowledge of the nature of a controlled substance can be proven with circumstantial evidence. *State v. Villa–Perez,* 835 S.W.2d 897, 900 (Mo. banc 1992). The only showing required as to the culpable mental state of *an accomplice* is that in aiding the principal in the commission of the offense, the defendant acted with the purpose to promote the commission of the offense for which he is being held liable. *Holmquest,* 243 S.W.3d at 449.

 Here, the record clearly shows that Wilson had crack cocaine in his pocket when police searched him and that there was a baggie of crack cocaine on the floor directly beneath the table where he had been sitting. The officers observed him doing something with his hands under the table after he was ordered to raise his hands in the air. This conduct could easily be inferred by the jury to show that Wilson was attempting to conceal something, and presumably, the baggie of crack cocaine that was found on the floor near where he was seated. Wilson does not dispute that he possessed the crack cocaine found in his pocket or that crack cocaine was being manufactured at the residence. This evidence alone was sufficient to establish that Wilson was aware of the nature of the controlled substance being produced at the house.

Wilson concedes in his brief that the conduct occurring at 1416 South Vermont was indeed a "drug operation." His argument is premised on the contention that there was no proof to personally connect him in any way with the manufacturing or production of the crack cocaine at the residence. He argues that the evidence merely established that he was present at the time of the search, and that he had some crack cocaine in his pocket, and that there was crack cocaine found nearby. He claims that the crack cocaine found in the kitchen cannot be connected to the crack cocaine found in his pocket because there was no evidence regarding how the drugs were produced or how or when he took possession of the crack cocaine.

 Under a theory of accomplice liability for drug trafficking, the State was not required to prove that Wilson was personally manufacturing the crack cocaine himself in order to convict him. Although mere presence at the scene is not sufficient to establish accomplice liability, presence at the scene of the crime coupled with the defendant's association with others involved before, during, and after the commission of the crime is indicia of aiding and may be considered in determining accomplice liability. *State v. Neal,* 14

S.W.3d 236, 240 (Mo.App.2000), *overruled on other grounds by Smith,* 229 S.W.3d at 95. Presence may be considered along with other incriminating evidence to determine if the total circumstances raise a reasonable inference that the accused participated in the crime. *State v. Mason,* 657 S.W.2d 40, 43 (Mo.App.1983). The jury may also consider evidence that drug-making materials and paraphernalia were found at the scene and that the defendant was aware that illegal drugs were being manufactured at the residence. *See Sensabaugh,* 9 S.W.3d at 679–80.[9] Furthermore, mere encouragement of the crime is sufficient to show accomplice liability. *Id.* at 679. Evidence that the defendant provided an outlet for the manufacturing operation by selling the illegal drugs may be considered by the jury in determining whether the defendant encouraged the manufacturing process. *Id.* at 679–80.

Contrary to Wilson's contention, the evidence establishes much more than his mere presence at the scene of the crime. At trial, the police officers testified that Wilson and the others were all found in the kitchen where the crack cocaine, paraphernalia, and drug-making ingredients, materials, and supplies were located. The kitchen contained all of the necessary materials, ingredients, and equipment to turn powdered cocaine into crack cocaine. This evidence strongly suggests that the manufacturing of the crack cocaine was primarily occurring in the kitchen. In addition, Wilson had eight individually wrapped "rocks" of crack cocaine in his pocket and was in close proximity to the bag of crack cocaine found on the floor beneath where he had been seated. The amount of crack cocaine found in Wilson's pocket was 1.06 grams. The bag of crack cocaine found on the kitchen floor beneath him contained 1.64 grams of cocaine base. The officers testified that this was considered to be a "dealer's amount" of crack cocaine.

The record clearly establishes that Wilson was present at the scene, that he possessed a dealer's amount of crack cocaine, and that he was associating with persons involved in the drug manufacturing operation at 1416 South Vermont. From all of the evidence presented at trial, the jury could reasonably infer that Wilson intended to deliver and sell the crack cocaine, thus providing an outlet for the drug operation. This evidence was sufficient to constitute the promotion, furtherance, and encouragement of the drug manufacturing operation, and for the jury to find that Wilson was aiding or encouraging the others in the manufacturing of the crack cocaine.

In view of these facts, we find there was sufficient evidence to support the jury's determination that Wilson was guilty as an accomplice of the crime of first-degree trafficking. Therefore, the trial court did not err in denying Wilson's motion for judgment of acquittal and sentencing him for trafficking in the first degree.

We affirm the judgment.

9. In *Sensabaugh,* the Eastern District upheld the jury's guilty verdict after the defendant challenged the sufficiency of the evidence to support his conviction for first-degree trafficking (methamphetamine) on an accomplice liability theory. 9 S.W.3d at 680.